## THE VANADIS.

### (District Court, S. D. New York.   April 8, 1918.)

1. Collision ☞136—Damages—Demurrage.

   Where a pleasure yacht was injured in a collision, so that it had to be drydocked for repairs, and at that time there was a demand for such vessels, and it could have readily been chartered, the owner is entitled, as damages for detention, to recover the charter value of the vessel, even though he had no intention of chartering it, and intended to use it for his recreation.

2. Collision ☞136—Damages—Elements.

   In such case the award may include the cost of finding the crew during the detention; that being a burden which the putative charterer would have had to bear, and the owner not being obliged to dismiss his crew during the period of detention in minimization of damages.

In Admiralty.   Libel by the owner of the yacht Vanadis.   On exceptions to the master's report, ruling that the libelant was not entitled to damages for detention of the vessel while in dry dock for repairs after the collision.   Exceptions sustained.

Exceptions to a commissioner's report in admiralty, awarding damages for a collision in which the libelant's yacht, Vanadis, was injured off Glen Cove, in Long Island Sound, on June 13, 1915. The only point raised by the exceptions is the commissioner's ruling that the libelant was not entitled to damages for detention (demurrage, so called), while in dry dock for repairs after the collision.   It was proved that $13,000 a month had been offered for the yacht for the seasons of 1914 and 1915, that such vessels were scarce and in demand at the time, and that her charter value was $11,000, assuming any damages for detention were properly allowable at all.   The period of the detention was, roughly speaking, the month of July, 1915, which was part of the season in which vessels of her class were used.

Robert S. Erskine, of New York City, for libelant.
John W. Griffin, of New York City, for claimant.

LEARNED HAND, District Judge.   [1] The Circuit Court of Appeals has just decided in The Eros, 251 Fed. 45, —— C. C. A. ——, that the charterer of a yacht is entitled to damages for withdrawal by the owner during the season.   In that case the charterer had chartered a substitute for the period of the charter, and the added cost of the substitute was allowed as the measure of damages.   Obviously the loss to the charterer was the use of the yacht withdrawn, and only that. It appeared clearly enough that he had not intended any commercial use of her, and that the act of withdrawal injured him merely by taking away the opportunity of recreation which she afforded.   His chartering of the substitute could under no aspect go further than to establish the value of that recreation in money.   Indeed, even as a measure of damages it was improper, if a different market value for the yacht had been established.   In any view, it was immaterial upon the question whether the law should recognize his loss of recreation at all.   That question, which the decision necessarily involved, this case also presents.

On principle it seems to me impossible that we should draw any

distinction between yachts and any other property capable of use only as means of recreation or pleasure. Nobody has any hesitation about such as are consumable, like wines, or flowers, or perfumes, or tobacco. It would be a fatuous defense against an action for injuries to such as these to prove that the owner would certainly have consumed them himself. Furthermore, if the defendant had wrongfully destroyed a yacht or motorcar, he would be hardier than most, were he to offer to show that the owner was bound not to sell or to let it. Yet surely there can be no distinction, at least it would seem so, between the loss of a part of the recreation derivable from such property and the loss of the whole. All of them in the end are consumable, and the difference is only in the extent of the loss.

But it is urged that the contrary is established in The Conqueror, 166 U. S. 110, 17 Sup. Ct. 510, 41 L. Ed. 937. I must concede that some of the language in that case, broken from its context, lends itself to that conclusion, but the decision involved nothing of the kind. It turned upon the dubiousness of the proof of value of the yacht. Doubtless that is a necessary condition of damages, here as elsewhere. We are all accustomed to the purchase and sale of pleasures and recreation, whether they be embodied in the use of things, like this, or in entertainment, like the stage. They have an exchange value, like the uses of any other parts of the appropriable world, which answer our native dispositions. The test is, as in every other case, their value in exchange; for the purpose of the recovery is to effect the result of an exchange. I see no reason to think that, if the exchange value of the yacht's use in The Conqueror, supra, had been established in the customary way, the libelant would have had further difficulty in his recovery.

[2] The award may also include the cost of finding the crew during the detention; this being a burden upon any putative charterer, and not included in the hire. The libelant was not obliged to dismiss his crew in minimization of his damages.

Exception sustained.