Thomas G. **SNAVELY**, Plaintiff-Appellee,

v.

Archie K. **LANG** et al.,
Defendants-Appellants.

No. 77–3057.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 11, 1978.

Decided Jan. 29, 1979.

David G. Davies, Arter & Hadden, Cleveland, Ohio, Charles W. Waterfield, Flynn, Py & Kruse Co., L.P.A., Sandusky, Ohio, for defendants-appellants.

Gene B. George, Ray, Robinson, Kennen & Hanninen, Cleveland, Ohio, for plaintiff-appellee.

Before WEICK, Circuit Judge, PHIL-LIPS, Senior Circuit Judge, and TAYLOR,* District Judge.

ROBERT L. TAYLOR, District Judge.

This is an appeal by Archie K. Lang, Archie K. Lang d/b/a Venetian Marina, ("Lang"), and Inland Seas Boat Company, ("Inland Seas"), a corporation of which Lang was President, from part of a judgment rendered by the District Court in the Northern District of Ohio in favor of appellee, Thomas G. Snavely, the purchaser of a yacht, the Molly Jane, built by Inland Seas and repaired at Lang's marina. The District Judge, sitting in admiralty,[1] awarded damages against both appellants for repairs arising from breach of warranty and fire damage. The District Judge also awarded damages against both appellants for loss of use of the yacht for the above periods of repair. Appellant Lang appeals from that part of the judgment holding him individually liable for breach of warranty. Both appellants appeal from the award for loss of use.

The vessel involved was originally constructed by Inland Seas under a contract with Snavely. Although the contract called for the vessel to be completed and delivered in 1969, it was not actually completed and delivered until April 17, 1970. The purchase price, including the value of exchange of another vessel, was between $81,000.00 and $82,000.00. Snavely took delivery at the Inland Seas factory in Sandusky, Ohio, which was on the same property as Lang's marina. Snavely temporarily operated the vessel in and around a berth at Venetian Marina in order to become familiar with it. The vessel was subsequently moved to Cleveland where Snavely also had a berth. On May 9 and 10, 1970, Snavely, his wife and son were shocked by a strong electrical current in the water around the Molly Jane caused by improper design and/or installation of the vessel's electrical system. Prior to this incident, Snavely had discovered other defects in the vessel's electrical system and plumbing. In response to Snavely's demand that the problems be corrected, Lang and an employee of Inland Seas came to Cleveland and took the vessel back to Sandusky where it was placed in a berth at Venetian. Marina while repairs were made. On May 20, several of the Inland Seas employees were aboard the yacht testing the electrical system. Shortly after they left, a fire broke out in the engine compartment. The fire caused extensive damage.

Repair estimates were solicited by Snavely from Lang as well as from other marinas. Snavely considered Lang's estimate to be excessive. When Snavely refused to have the repairs performed by Lang he was forced to pay $3,044.00 before the vessel was released. The Molly Jane was ultimately removed to Lakeside Marina, the low bidder, where repairs were carried out through October 20, 1970. After the repairs at Lakeside Marina were completed, Snavely took the Molly Jane on a trip to Florida. During the trip a defective propeller strut broke and the yacht was laid up for repairs from November 10 to November 22, 1970 at Wrightsville Beach, North Carolina. After the Molly Jane arrived in Florida it was laid up from January 27 to February 12, 1971 in order to paint the deck, which had not been done as a part of the original fire repair, and to paint the hull, which had been partially painted by the appellants after the fire.

■ The first issue in the appeal is Lang's liability for repair and loss of use arising from breach of warranty. All parties agree that there is no individual act by Lang in the record which would justify disregarding the corporate entity, Inland Seas, and holding Lang individually for liabilities of the corporation, of which he was an officer. Accordingly, the judgment for

---

* The Honorable Robert L. Taylor, District Judge, United States District Court for the Eastern District of Tennessee, sitting by designation.

1. There is no challenge in this case to the exercise of the District Court's admiralty jurisdiction. The case primarily involves damages to a vessel for a fire on a boat while the boat was afloat on navigable waters. *See Berwind-White Coal Mining Co. v. City of New York*, 135 F.2d 443, 446 (2nd Cir. 1943).

damages in warranty against Lang is reversed.[2]

The remaining issue in the case, which was the issue vigorously contested in oral argument and in the briefs, concerns the award of $32,914.56 by the District Judge for loss of use of the Molly Jane for the periods of repair. The award does not appear to have been for loss of charter hire, but rather was for the value of deprivation of the vessel for the periods of time in question. *Cf. Johnson's Branford Boat Yard, Inc. v. Yacht Altair*, 260 F.Supp. 841, 846 (D.Conn.1966). Appellants contend that such an award is not a proper item of damage in a case involving a pleasure boat. The record shows clearly, and there is no dispute, that the Molly Jane was purchased and was used purely for recreation.

The seminal case in the area of damages for loss of use of a pleasure boat is *The Conqueror*, 166 U.S. 110, 17 S.Ct. 510, 41 L.Ed. 937 (1897). In that case, the Supreme Court reversed an award of demurrage[3] for wrongful detention of a pleasure boat. The Court stated that:

[i]t is not the mere fact that a vessel is detained that entitles the owner to demurrage. There must be a pecuniary loss, or at least, a reasonable certainty of pecuniary loss, and not a mere inconvenience arising from an inability to use the vessel for the purposes of pleasure . . . . In all the cases in which we have allowed demurrage the vessel has been engaged, or was capable of being engaged, in a profitable commerce . . . . The Conqueror, however, did not belong to the class of vessels which are engaged in commercial pursuits, or are ordinarily let to hire. . . . She was purchased by

her owner for his personal pleasure, and there is not an atom of testimony tending to show that he bought her for hire, or would have leased her if he had been able to do so . . . . *The Conqueror*, 166 U.S. at 133–134, 17 S.Ct. at 519.

*The Conqueror* has been interpreted as creating an iron-clad rule that under federal maritime law demurrage is not an allowable item of damage for loss of use of a private pleasure craft. *See Thomson v. United States*, 266 F.2d 852, 856 (4th Cir. 1959); *Oppen v. Aetna Insurance Company*, 485 F.2d 252, 257 (9th Cir. 1973). *But see Finkel v. Challenger Marine Corp.*, 316 F.Supp. 549 (S.D.Fla.1970); *The Vanadis*, 250 F. 1010 (E.D.N.Y.1918). Under such a rule the award for loss of use in this case would plainly fall.

Snavely argues that the reach of *The Conqueror* has been limited by *Brooklyn Eastern District Terminal v. United States*, 287 U.S. 170, 53 S.Ct. 103, 77 L.Ed. 240 (1932). In *Brooklyn Eastern District Terminal*, the Court, speaking through Justice Cardozo, affirmed the reversal of an award of damages for loss of use of a steam tug. The Court held that the award by the District Court was erroneous and extravagant. *Id.* at 174, 53 S.Ct. 103. After stating that the theoretical availability of demurrage did not need to be decided for purposes of the decision, Justice Cardozo described portions of the decision in *The Conqueror*, which concerned the general rule regarding demurrage, as "not essential to the judgment [therein]." *Id.* at 175, 53 S.Ct. at 104. Justice Cardozo added that there existed a strong current of authority to the effect that, in the case of a yacht employed for

**2.** Snavely claimed that $5,650.14 represents the judgment against Lang arising from breach of warranty. Lang places the judgment at $8,605.58. This dispute, aside from computation errors, concerns the proper allocation of one item of damage worth $212.56 and the proper allocation of the loss of use during January and February, 1971. The District Judge held that the $212.56 was attributable partially to the warranty claim and partially to the fire damage claim. In the opinion of the Court this item of damage should not be allocated solely

to warranty repair. The District Judge also held that the January period of loss of use should be attributed to fire damage. The Court is not persuaded that this ruling was in error. Therefore, the total warranty judgment from which Lang is released is $5,650.14.

**3.** "[T]he loss of profits or of the use of a vessel pending repairs or other detention . . . [is] commonly spoken of as 'demurrage' . . . ." *The Conqueror*, 166 U.S. at 125, 17 S.Ct. at 516.

pleasure, "the value of the use may be considered by the triers of the facts in fixing the recovery if there has been a substantial impairment of that enjoyment for which such vessels are maintained." *Id.* (citations omitted). The characterization of *The Conqueror* in *Brooklyn Eastern District Terminal* as well as the discussion therein of the availability of demurrage has itself been described as dictum. *See Oppen v. Aetna Insurance Co.*, 485 F.2d at 257 n.12.

While appreciative of the reasoning in *Brooklyn Eastern District Terminal,* and with great deference to Justice Cardozo, the Court is constrained to view *The Conqueror* as retaining its full vitality. Although the Court in *The Conqueror* was influenced by the relatively short period of actual loss of use, 166 U.S. at 134, 17 S.Ct. 510 as well as by the enormity of the award of damages, *id.,* the basis of disallowing all recovery for loss of use in that case was that the loss of use of a pleasure vessel which would not have been let for hire, is "a mere inconvenience" and not a "pecuniary loss." *Id.* at 133, 17 S.Ct. 510. The opinion is clear that demurrage should not be allowed unless there is proof that the vessel was "engaged, or was capable of being engaged, in a profitable commerce." *Id.* The Conqueror was not considered that type of vessel not because the proof of worth was insubstantial, but because her owner would not "have leased her if he had been able to do so." *Id.* at 134, 17 S.Ct. at 519. The Court's statement that the evidence did not show with certainty that the vessel "belonged to a class of vessels for which there was a steady demand in the market," *id.,* was not an alternative ground of decision but was a restatement of the requirement that the plaintiff show a realistic likelihood of charter. The rule against demurrage for pleasure boats cannot, therefore, be viewed as mere dictum, to be ignored by this Court.

Nor does *Brooklyn Eastern District Terminal* weaken the rule in *The Conqueror.* The criticism of *The Conqueror* contained in that case was, as admitted by the Court, not intended to restate the general rule of recovery of demurrage. The opinion was not intended to "overleap the limitations of the record." 287 U.S. at 173, 53 S.Ct. at 104. Not only did *Brooklyn Eastern District Terminal* not concern demurrage for a pleasure boat, but the Court held that the loss of use allowed by the district court for the tug was improper because plaintiff had not sustained additional actual expenses arising out of the loss of use. *Id.* at 177, 53 S.Ct. 103. The criticism of *The Conqueror* cannot be viewed as a necessary part of the decision.

Even were the Court to be persuaded by the dictum in *Brooklyn Eastern District Terminal* that demurrage ought to be available in some non-commercial settings, the Court doubts that the case sub judice represents a "substantial disturbance of enjoyment." *Id.* at 175, 53 S.Ct. 103. Snavely testified that the periods of repair during November and January caused him to forego one short vacation trip while in Florida. Otherwise, these repairs appear merely to have delayed his use of the Molly Jane. Snavely stated generally that he would have used the vessel more than he did during this time, but the two periods of repair, one of thirteen days and one of sixteen days, did not prevent extensive use by him of the Molly Jane during the winter of 1970–1971.

During the summer period of deprivation, amounting to 163 days, the record does not show the precise use intended to be made of the yacht. In January, 1974, Snavely testified that between that time and early 1971, he had been on the Molly Jane between 1300 and 1400 hours. This would average roughly 450 hours, or about nineteen days, per year. Such use would have to be considered intermittent. The loss of one summer season of occasional yachting certainly is an inconvenience, but cannot be considered a deprivation sufficient to justify a substantial award of damages. There is no way to tell how often the yacht would have been used, nor to estimate the value of recreation deferred for a period of time. Snavely's main concern was that because of the loss of use of the boat, his family did not develop an appreciation of boating. There can be no recovery for a loss of this

sort. While the Court is sympathetic to any loss of time spent together by a family, an award of damage for such a loss opens the courts to imagination and speculation in evaluation of damages. It is precisely these types of claims for damages which render too "highly speculative and immeasurable" an award for demurrage in the case of a vessel used purely for recreation. *See Thomson v. United States*, 266 F.2d at 856; cf. *Johnson's Branford Boat Yard, Inc. v. Yacht Altair*, 260 F.Supp. at 846–847.

 The Court does not herein decide whether pecuniary loss is an absolute requirement for recovery of demurrage. The facts of this case, showing loss of intermittent use of a vessel utilized solely for pleasure, certainly do not justify such an award. For the foregoing reasons, the award of damages for loss of use must be reversed.

This opinion leaves unaffected the joint liability of appellants, Inland Seas and Lang, for $4,777.06 representing repairs of fire damage and the liability of Inland Seas for $3,421.55 representing repairs for breach of warranty.