[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 98-5511

_____

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
03/20/00
THOMAS K. KAHN
CLERK

D. C. Docket No. 92-01058-CV-DKTH

CENTRAL STATE TRANSIT & LEASING CORPORATION,

Plaintiff-Appellant,
Cross-Appellee,

versus

JONES BOAT YARD, INCORPORATED,

Defendant-Cross-Claimant,
Cross-Defendant, Appellee,
Cross-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

(March 20, 2000)

Before BLACK and HULL, Circuit Judges, and GOODWIN*, Senior Circuit Judge.

BLACK, Circuit Judge:

_____

* Honorable Alfred T. Goodwin, Senior U.S. Circuit Judge for the Ninth Circuit, sitting by designation.

Appellant Central State Transit & Leasing Corporation appeals the amount of damages awarded to it in the district court's judgment against Appellee Jones Boat Yard. Appellant claims the district court erred in failing to award loss of use damages and in limiting Appellee's liability to its percentage of fault. On cross appeal, Appellee asserts that the district court was clearly erroneous in finding that Appellee was grossly negligent. We conclude the district court did not err.

## I. BACKGROUND

Appellee Jones Boat Yard is engaged in the business of berthing and repairing vessels on the Miami River. On November 22, 1988, Appellee contracted to purchase a floating dry dock from Conrad Industries (Conrad), a Louisiana corporation. Conrad constructed the dry dock and delivered it to Appellee on April 13, 1989. Between May 22, 1989, and April 26, 1990, Appellee used the floating dry dock four separate times to berth four different ships. On all four occasions, although none of the vessels were damaged, "the dry dock exhibited serious listing and instability, and [on] at least one of these instances . . ." a vessel experienced a listing of up to 15 degrees. After each of these incidents, Appellee contacted Conrad, who told Appellee that the listing problem was the result of operator error.

On December 22, 1989, Appellant authorized William Hinsch, the Captain of

Appellant's ship, the BLACKHAWK, to execute a work order with Appellee for use of its drydock. The BLACKHAWK is documented by the United States Coast Guard as a purely private pleasure vessel and has never been chartered by Appellant. The work order provided that Appellee would have no liability for damage to the vessel unless caused by its "gross negligence." In addition, the work order limited Appellee's aggregate liability to $300,000.

On May 15, 1990, Appellee towed the BLACKHAWK into the floating drydock. Captain Hinsch refused to allow Appellee to attach the steel cables from the dock directly to the vessel, and instead required that the steel cables be attached to the vessel's nylon rope lines. Appellant released Appellee from any liability for damage caused by using the nylon rope lines.

There is a dispute as to how the accident occurred. One witness, Calvin Kreidt, stated that the vessel "listed a little to the starboard side," and then slowly listed back to port. As the drydock started listing to port, Kreidt heard one of the starboard ropes "go 'pop'."[2] Prior to the "pop," Kreidt stated that the vessel did not shift inside the drydock, nor did any of the keel blocks inside the dock move. As the vessel moved to port, Kreidt stated that he could see the keel block being kicked out from underneath the vessel.

---

[2] The district court specifically found that the utilization of the nylon ropes was "in no way responsible for the damage accrued" to the vessel.

Arthur Sargent, an expert retained by Appellant, gave a slightly different account of the accident. According to Sargent, as the drydock listed, the bilge blocks moved away from the vessel, allowing the keel of the vessel to rotate and fall off its keel blocks. This movement placed an unusual strain on the nylon ropes, causing them to snap and break. Sargent claimed that the vessel fell off the blocks because the blocks were unsatisfactory and also stated that the bilge blocks dropped out of position because they were not secured properly with locks. Sargent also determined that the dry dock was not designed or constructed properly by Conrad. According to Sargent, if the dry dock had been designed properly by Conrad, the accident would not have happened.

Appellant brought suit against Appellee and Conrad seeking money damages for injury to Appellant's vessel, the BLACKHAWK. Appellant asserted that both Appellee and Conrad were "negligent, grossly negligent, and showed wilful, reckless, and wanton disregard of" Appellant's property. Appellant settled its claim against Conrad for $150,000 and dismissed with prejudice its claim against Conrad. Appellee and Conrad dismissed without prejudice their cross claims against each other for contribution and indemnity. Thereafter, the trial proceeded solely against Appellee.

The district court found that Appellee and Conrad were both "negligent and

that their negligence operated in concert to cause injury to" Appellant in the amount of $125,000. The district court attributed 75% of the damage to Conrad and 25% of the damage to Appellee. The district court agreed that Conrad had constructed and designed the dry dock poorly, finding that

[t]he dry dock had been improperly designed and constructed by Conrad so that as it rose in the water and approached upon the water surface, that is on its pontoon deck, it listed from one side to the other, thus the dry dock was unstable and unsuitable for the purpose it had been intended and for which it was constructed.

The district court also found that Appellee had performed its work with "gross negligence" and accordingly directed Appellee to pay $31,250 (25% of $125,000). Specifically, the Court found that Appellee was grossly negligent given the four prior experiences in which Appellee saw that the drydock was unstable and unsafe. The district court determined, however, that Appellant was not entitled to any "loss of use" damages for the time the BLACKHAWK was being repaired.

On appeal, Appellant claims the district court erred in denying loss of use damages. Appellant also argues the district court erred by apportioning the fault among Appellee and Conrad. Finally, on cross appeal, Appellee maintains the district court's finding that Appellee's conduct was grossly negligent is clearly

5

erroneous.

## II. DISCUSSION

We review the district court's findings of fact for clear error and review its conclusions of law de novo. *See American Dredging Co. v. Lambert*, 153 F.3d 1292, 1295 (11th Cir. 1998).

A.  <u>Loss of Use Damages</u>

The seminal case regarding damages for loss of use of a pleasure boat is *The Conqueror*, 166 U.S. 110, 17 S. Ct. 510 (1897). In *The Conqueror*, the Supreme Court stated that the law is well settled that "the loss of profits or of the use of a vessel pending repairs, or other detention, arising from a collision or other maritime tort, and commonly spoken of as 'demurrage,' is a proper element of damage." *The Conqueror*, 166 U.S. at 125, S. Ct. at 516. The Court noted that "[i]t is equally well settled, however, that demurrage will only be allowed when profits have actually been, or may be reasonably supposed to have been, lost, and the amount of such profits is proven with reasonable certainty." *Id.* The Court then emphasized that

> [i]t is not the mere fact that a vessel is detained that entitles the owner to demurrage. There must be a pecuniary loss, or at least a reasonable certainty of pecuniary loss, and not a mere inconvenience arising from an inability to use the vessel for the purpose of pleasure . . . . In other

words, there must be a loss of profits in its commercial sense.

*Id.* 133, S. Ct. at 519.

More recently, we have recognized the continuing validity of the general rule set forth in *The Conqueror*. *See Ove Skou v. United States*, 478 F.2d 343, 345 (5th Cir. 1973) (citing with approval *The Conqueror*)[3]; *Bolivar County Gravel Co. v. Thomas Marine Co.*, 585 F.2d 1306, 1308 n.2 (5th Cir. 1978) (same); *The Wolsum*, 14 F.2d 371, 377 (5th Cir. 1926) (same). In *Ove Skou*, we specifically held that "[d]emurrage 'will only be allowed when profits have actually been, or may be reasonably supposed to have been, lost, and the amount of such profits is proved with reasonable certainty.'" *Ove Skou*, 478 F.2d at 345 (quoting *The Conqueror*, 166 U.S. at 125, 17 S. Ct. at 516). In addition, several other circuits have recognized the continuing validity of *The Conqueror's* rule for loss of use damages. *See Dow Chemical Co. v. The M/V Roberta Tabor*, 815 F.2d 1037, 1042 (5th Cir. 1987) (citing with approval the general rule from *The Conqueror*); *Snavely v. Lang*, 592 F.2d 296, 299 (6th Cir. 1979) (noting that "the Court is constrained to view *The Conqueror* as retaining its full vitality"); *Oppen v. Aetna Ins. Co.*, 485 F.2d 252, 257 (9th Cir. 1973) (citing *The Conqueror* as support for the assertion that "loss of use of

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981.

a private pleasure boat is not a compensable item of damages").

We therefore must apply the Supreme Court's holding in *The Conqueror* to the facts of this case.[4] Appellant thus is entitled to receive loss of use damages only if able to prove, with reasonable certainty, that profits had actually been, or may reasonably be supposed to have been, lost. Appellant, however, failed to meet this burden at trial. In fact, the district court specifically found that the corporations that used the BLACKHAWK for business purposes continued to pay fees to Appellant while the vessel was under repair. Because Appellant did not prove, with reasonable certainty, that profits had actually been or may reasonably supposed to have been lost, we affirm the district court's denial of loss of use damages.

B. Apportionment of Damages

The district court, citing *McDermott, Inc. v. AmClyde*, 511 U.S. 202, 210, 217, 114 S. Ct. 1461, 1466, 1470 (1994), held that Appellee was liable only for 25%, or its proportionate share, of the total damages. In *McDermott*, the Supreme Court held that when one joint tortfeasor has settled, the nonsettling joint tortfeasor's liability should be assessed on the basis of that tortfeasor's proportionate share. *See*

---

[4] Two district courts have suggested that *Brooklyn Eastern District Terminal v. United States*, 287 U.S. 170, 53 S. Ct. 103 (1932), partly overrules *The Conqueror*. *See Finkel v. Challenger Marine Corp.*, 316 F. Supp. 549 (S.D. Fla. 1970); *Nordasilla Corp. v. Norfolk Shipbuilding*, 1982 A.M.C. 99 (E.D. Va. 1981). We disagree and conclude we are bound by *The Conqueror* for purposes of deciding this case. *See also Snavely*, 592 F.2d at 298-99.

*McDermott*, 511 U.S at 217, 114 S. Ct. at 1469.

On appeal, Appellant argues the district court did not have the authority to limit Appellee's liability to its proportionate share because Appellee was not a joint tortfeasor. Appellant asserts that because Appellant's claim against Appellee is in contract while the claim against Conrad was in tort, Appellee cannot be a joint torteasor. We nevertheless conclude the proportionate share rule applies to this case because Appellee and Conrad "operated in concert" to cause a single injury to Appellant. *See Jovovich v. Desco Marine, Inc.*, 809 F.2d 1529, 1530 (11th Cir. 1987) (holding that nonsettling party benefits from proportionate share rule for "all theories of maritime liability apportionment"); *see also United States v. Reliable Transfer Co.*, 421 U.S. 397, 408, 956 S. Ct. 1708, 1715-16 (1975) (stating "when two or more parties have contributed by their fault to cause property damage in a maritime collision or stranding, liability for such damage is to be allocated among the parties proportionately to the comparative degree of fault . . .").

C. Appellee's Gross Negligence

To hold a party liable for gross negligence, the district court must find that the defendant had knowledge of the existence of circumstances which constitutes a "clear and present danger" and yet still undertakes "a conscious, voluntary act or omission . . . which is likely to result in injury." *Sullivan v. Streeter*, 485 So. 2d 893,

9

895 (Fla. 4th Dist. Ct. App. 1986) (citations omitted). On cross-appeal, Appellee claims the district court erred in finding Appellee was grossly negligent.

Based upon our review of the record, we conclude the district court's finding of gross negligence was not clearly erroneous. The evidence shows that Appellee knew that the dry dock had exhibited potentially serious defects on four separate occasions prior to the accident involving the BLACKHAWK. Given these facts, the district court did not clearly err in finding that Appellee had knowledge of the existence of circumstances which constituted a clear and present danger and yet still undertook a voluntary act which was likely to, and did, cause injury.

## III. CONCLUSION

The district court did not err in concluding Appellant was not entitled to loss of use damages and in limiting Appellee's liability to its proportionate share of the total damages. In addition, the district court did not err in finding Appellee grossly negligent.

AFFIRMED.