[PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
December 8, 2006
THOMAS K. KAHN
CLERK

————

No. 06-10920

————

D. C. Docket No. 01-01530 CV-S-N

CHRISTOPHER BARBOUR,
TONY BARKSDALE, et al.,

                                        Plaintiffs-Appellants,

versus

MICHAEL HALEY,
in his official capacity as Commissioner,
for the Alabama Department of Corrections,
STEPHEN BULLARD,
in his official capacity as Warden of
William E. Donaldson Correctional Facility, et al.

                                        Defendants-Appellees.

————

Appeal from the United States District Court
for the Middle District of Alabama

————

**(December 8, 2006)**

Before ANDERSON and DUBINA, Circuit Judges, and VINSON,* District Judge.

DUBINA, Circuit Judge:

In this appeal, we consider whether the Sixth, Eighth, and Fourteenth Amendments guarantee Appellants, indigent Alabama death-sentenced inmates ("the inmates"), the right to state-appointed counsel or some lessor form of state-provided legal assistance for the preparation and presentation of their postconviction claims. Relying upon United States Supreme Court and Eleventh Circuit precedents, as we must, we conclude that the United States Constitution does not afford appointed counsel on collateral review, and the inmates have failed to identify a lessor form of state-provided legal assistance to which they might be entitled. For these reasons, we affirm the district court's dismissal of the inmates' 42 U.S.C. § 1983 claims.

## I. BACKGROUND

On December 28, 2001, the inmates filed a class action complaint against the Commissioner for the Alabama Department of Corrections, the Wardens of William E. Donaldson Correctional Facility and Holman State Prison (the facilities in which the inmates are incarcerated), and the Governor of the State of Alabama (defendants collectively referred to as "the State"). The inmates, pursuant to 42

_____

*Honorable C. Roger Vinson, United States District Judge for the Northern District of Florida, sitting by designation.

2

U.S.C. § 1983, alleged that the State violated their First, Sixth, Eighth, and Fourteenth Amendment rights by (1) failing to provide counsel or any other form of legal assistance for the preparation and presentation of their postconviction claims, and (2) obstructing communication between the inmates and lawyers through restrictive visitation policies. The parties consented to have a magistrate judge conduct all proceedings and enter judgment under 28 U.S.C. § 636(c).

Thereafter, the State filed motions to dismiss for lack of subject matter jurisdiction. On March 24, 2003, the magistrate judge dismissed, for lack of subject matter jurisdiction, count two of the inmates' complaint.[1] The inmates moved for final judgment on the remaining issues and the State moved for summary judgment. Pursuant to a settlement between the parties, the magistrate judge dismissed the inmates' claims for interference with their efforts to gain access to legal assistance during the collateral review process. On January 23, 2006, the magistrate judge entered final judgment in favor of the State. The magistrate judge held that the right of meaningful access did not require the State to provide counsel to death-sentenced inmates for the purpose of investigating and filing postconviction petitions; *Christopher v. Harbury*, 536 U.S. 403, 122 S. Ct.

---

[1]The court referred to count two as the inmates' Sixth Amendment claims, but in actuality, count two alleged a "policy, pattern, and practice of arbitrary and capricious interference with Plaintiffs' efforts to gain access to legal assistance during the collateral review process" in violation of the Eighth and Fourteenth Amendments. Count one of the complaint alleged First, Sixth, and Fourteenth Amendment violations for failure to provide a mechanism to ensure that the inmates had access to the assistance of counsel for the preparation of their state postconviction petitions and interference with the inmates' efforts to access their legal teams during the collateral review process.

2179 (2002), foreclosed the inmates' claims for some lessor form of legal assistance; and the inmates' Sixth Amendment claims lacked merit (referring to its previous order in which the court ruled that there is no constitutional right to state-appointed counsel in postconviction proceedings). The magistrate judge's final order did not specifically address the inmates' Eighth Amendment claims; however, the court's earlier order which dismissed count two of the complaint included those claims.[2] The inmates then perfected this appeal.

## II. STANDARDS OF REVIEW

The magistrate judge dismissed, for lack of subject matter jurisdiction, the inmates' Sixth Amendment and Eighth Amendment claims for state-appointed counsel. We review dismissals for lack of federal subject matter jurisdiction *de novo*. *See Summit Medical Associates, P.C. v. Pryor*, 180 F.3d 1326, 1333-34 (11th Cir. 1999).

The magistrate judge rejected, as a matter of law, the inmates' Fourteenth Amendment claims for state-appointed postconviction counsel or some lessor form of state-provided legal assistance. We review the district court's conclusions of

---

[2]Although the inmates' First Amendment claims are not specifically mentioned in the magistrate judge's final order, the court recognized that the right of access is multifaceted and dependent upon various constitutional formulations, including the First Amendment. Thus, the court's "access" analysis encompasses the inmates' First Amendment claims. On appeal, the inmates' frame their "access" argument as Fourteenth Amendment claims and we address the claim in like manner.

law *de novo*. *Central State Transit & Leasing Corp. v. Jones Boat Yard, Inc.*, 206 F.3d 1373, 1376 (11th Cir. 2000).

### III. DISCUSSION

A. Fourteenth Amendment Right of Access to the Courts

1. *Standing*

The inmates contend that they are being denied meaningful access to the courts, in violation of *Bounds v. Smith*, 430 U.S. 817, 97 S. Ct. 1491 (1977), because the State does not provide them counsel to prepare and present to the courts their postconviction petitions. The State argues that the inmates lack standing to assert an access claim because they failed to prove "actual injury" as required by *Lewis v. Casey*, 518 U.S. 343, 349-50, 116 S. Ct. 2174, 2179 (1996), and failed to establish a colorable underlying claim pursuant to *Harbury*, 536 U.S. at 414-15, 122 S. Ct. at 2186-87.

It is now clearly established that prisoners have a constitutional right of access to the courts. *Bounds*, 430 U.S. at 821, 97 S. Ct. at 1494. In some instances that right requires States to shoulder affirmative obligations to assure that indigent prisoners have an adequate opportunity to present their claims fairly. *Id.* at 824, 97 S. Ct. at 1496. Accordingly, the Supreme Court has held that the "right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing [them] with

5

adequate law libraries or adequate assistance from persons trained in the law." *Id.* at 828, 97 S. Ct. at 1498. However, in order to assert a claim arising from the denial of meaningful access to the courts, an inmate must first establish an actual injury. *Lewis*, 518 U.S. at 349-50, 116 S. Ct. at 2179.

Actual injury may be established by demonstrating that an inmate's efforts to pursue a nonfrivolous claim were frustrated or impeded by a deficiency in the prison library or in a legal assistance program or by an official's action. *Id.* at 351, 116 S. Ct. at 2180; *Bass v. Singletary*, 143 F.3d 1442, 1445 (11th Cir. 1998). For instance, an inmate could show actual injury with proof that a court dismissed his action for failure to comply with a technical requirement unknown to the inmate due to deficiencies in the prison's assistance facilities, or that a claim could not be presented to a court because an inmate was so stymied by the law library's inadequacies that he could not prepare a complaint. *Lewis*, 518 U.S. at 351, 116 S. Ct. at 2180. At the summary judgment stage, general factual allegations of injury will not suffice; rather, the plaintiff "must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true." *Id.* at 358, 116 S. Ct. at 2183.

The primary injury that the inmates allege is the preclusion and dismissal of potentially meritorious postconviction claims.[3] They cite cases in which death-sentenced inmates' postconviction petitions were dismissed on procedural or limitations grounds as proof of actual injury. It is the State's position that because the inmates were actually able to file a postconviction petition, even if subsequently dismissed, the inmates cannot prove actual injury. However, this argument contravenes *Lewis's* instruction that an inmate need only demonstrate "that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known." *Id.* at 351, 116 S. Ct. at 2180.

Even if the dismissal of an inmate's petition on procedural or limitations grounds could qualify under *Lewis* as an actual injury, the State maintains that the inmates have not proven any causal connection between the injury–dismissal of their postconviction petitions–and the conduct complained of–failure to provide counsel. However, for purposes of satisfying Article III's causation requirement, "we are concerned with something less than the concept of 'proximate cause.'" *Focus on the Family v. Pinellas Suncoast Transit Authority*, 344 F.3d 1263, 1273

---

[3]The inmates also allege that they have suffered prejudice resulting from rushed drafting and filing of postconviction petitions to meet statute of limitations deadlines. However, the inmates fail to identify any inmate whose efforts to pursue postconviction relief were hindered as a result of the time that it took the inmate to find volunteer counsel.

(11th Cir. 2003) (citation omitted). "[E]ven harms that flow indirectly from the action in question can be said to be 'fairly traceable' to that action for standing purposes." *Id.* Thus, it is reasonable to conclude that the dismissal of the inmates' postconviction petitions on procedural or limitations grounds is fairly traceable to the lack of counsel to adequately and timely prepare their petitions.

Next, the State alleges that the inmates fail to establish that they have colorable underlying claims because the underlying claims are not identified within their complaint. The purpose of recognizing an access claim is to provide vindication for a separate and distinct right to seek judicial relief. *Harbury*, 536 U.S. at 414-15, 122 S. Ct. at 2186. Therefore, a litigant asserting an access claim must also prove that he has a colorable underlying claim for which he seeks relief. *Id.* at 414-15, 122 S. Ct. at 2186-87. The right is ancillary to the underlying claim. *Id.* at 415, 122 S. Ct. at 2186. Thus, the plaintiff must identify within his complaint, a "'nonfrivolous,' 'arguable' underlying claim." *Id.* at 415, 122 S. Ct. at 2187 (citation omitted). The complaint identified three forms of postconviction relief relevant to the inmates' claims–ineffective assistance of counsel, jury misconduct, and violations of *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963). Unlike *Harbury*, wherein the trial court and the defendants were left to guess at the plaintiff's unstated cause of action, it appears clear from the face of the inmates' complaint, the arguments made below, and the district court order,

8

that the inmates' underlying claims, as listed in the complaint and argued to the district court, are claims for postconviction relief. Although it is questionable whether the inmates provided sufficient detail to determine whether their underlying claims are "arguable" and "nonfrivolous," the complaint does provide some evidence of potentially arguable postconviction claims. Assuming *arguendo* that the inmates have identified colorable underlying claims, we proceed to consider the merits of the inmates' access claims.

2. *Right to Postconviction Counsel*

The inmates raise two issues that they claim entitle them to state-appointed counsel *prior* to filing their postconviction challenges.[4] First, the inmates contend that Alabama's failure to provide them any form of legal assistance, including paralegal aid or a public defender to assist in preparing and presenting postconviction petitions, denies them meaningful access to the courts. Second, they allege that the difficulty of complying with Alabama's strict postconviction pleading requirements, issue-preclusion rules, and statute of limitations deadlines without counsel denies them meaningful access. The district court held that it was bound by *Hooks v. Wainwright*, 775 F.2d 1433 (11th Cir. 1985), and concluded that, as a matter of law, the right of meaningful access does not require the State to

---

[4]Alabama provides for the appointment of counsel for a petitioner seeking postconviction relief *after* the petition is filed, if the petition is not summarily dismissed. *See* Ala. R. Crim. P. 32.7(c).

9

provide counsel to death-sentenced inmates for the purpose of investigating and filing postconviction petitions.

In *Hooks* we invalidated a district court order which required that *"any Florida library plan, devised to ensure constitutional access to the courts by state inmates, must include a provision for attorney assistance."* *Id.* at 1438. As in the present case, the *Hooks* plaintiffs relied upon *Bounds* in support of their position that Florida prisoners were entitled to state-provided counsel for the filing of collateral suits. *Hooks*, 775 F.2d at 1434. The Supreme Court in *Bounds* held that States must have a constitutionally acceptable method of ensuring indigent inmates meaningful access to the courts. *Bounds*, 430 U.S. at 828-32, 97 S. Ct. at 1498-1500. However, after careful review of *Bounds,* we held that requiring a state to provide counsel to prisoners for the filing of collateral suits was squarely contrary to *Bounds*. *Hooks*, 775 F.2d at 1435.

We agreed that while *Bounds* clearly recognized the value that lawyers and trained paralegals might add to an access program for indigent inmates, *Bounds* nonetheless contemplated a legal access program that could meet constitutional demands without the provision of counsel. *Id.* Indeed, the Supreme Court in *Bounds* explicitly stated that a legal access program need not include any of the types of legal assistance that it had described, which included law libraries and assistance from persons trained in the law. *Bounds*, 430 U.S. at 832, 97 S. Ct. at

10

1500; *Hooks*, 775 F.2d at 1435. We also found it significant that *Bounds* referred to "law libraries *or* other forms of legal assistance, in the disjunctive, no fewer than five times." *Hooks*, 775 F.2d at 1435. Moreover, we held that *Bounds* and other cases preceding it simply removed barriers to court access that imprisonment or indigency erected. "They in effect tended to place prisoners in the same position as non-prisoners and indigent prisoners in the same position as non-indigent prisoners." *Id*. at 1436. However, as we observed, the removal of such barriers caused by imprisonment and indigency "is a far cry from constitutionally requiring the state to provide legal counsel for the imprisoned." *Id.* at 1437.

Since *Hooks*, this court has consistently held that there is no federal constitutional right to counsel in postconviction proceedings. *Arthur v. Allen*, 452 F.3d 1234, 1249 (11th Cir. 2006), *modified on reh'g*, 459 F.3d 1310 (11th Cir. 2006); *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003); *Tower v. Phillips*, 7 F.3d 206, 211 (11th Cir. 1993); *Presnell v. Zant*, 959 F.2d 1524, 1532 n.6 (11th Cir. 1992). This is so even when the prisoner is under a sentence of death. *Allen*, 452 F.3d at 1249. Further, this court has "declined to find an exception even 'when the state collateral proceeding was the petitioner's first opportunity to raise the claim.'" *Id.* at 1249-50 (citation omitted). We are constrained to follow *Hooks* and its progeny. However, even if we rejected

*Hooks*, we are nonetheless bound by United States Supreme Court precedent, which precludes us from granting the inmates the relief they seek.

The precise question at issue in this case was decided by the Supreme Court in *Murray v. Giarratano*, 492 U.S. 1, 109 S. Ct. 2765 (1989) (plurality opinion). There, the Court held that death-sentenced inmates have no federal constitutional right to counsel for purposes of seeking postconviction relief. *Id.* at 7-12, 109 S. Ct. at 2768-72. In so holding, the Court relied principally upon its analysis in *Pennsylvania v. Finley*, 481 U.S. 551, 107 S. Ct. 1990 (1987), and *Ross v. Moffitt*, 417 U.S. 600, 94 S. Ct. 2437 (1974).

The Supreme Court in *Ross* considered whether the Due Process Clause or the Equal Protection Clause of the Fourteenth Amendment required the State of North Carolina to provide indigent inmates counsel to take discretionary appeals. *Ross*, 417 U.S. at 610-12, 94 S. Ct. at 2443-45. The Court distinguished the discretionary appeals process, wherein it is the defendant who generally initiates the process, from the trial stage of a criminal proceeding, in which the defendant is haled into court by the State and needs an attorney to challenge the State's objective to convert his presumption of innocence to guilt. *Id.* at 610-11, 94 S. Ct. at 2444. The difference is significant because, the Court stated, "while no one would agree that the State may simply dispense with the trial stage of proceedings without a criminal defendant's consent, it is clear that the State need not provide

12

any appeal at all." *Id.* at 611, 94 S. Ct. at 2444. Further, the Court reasoned that the Equal Protection Clause does not require a state to duplicate the legal arsenal that may be privately retained by a criminal defendant. *Id.* at 616, 94 S. Ct. at 2447. Rather, states need only ensure that the "appellate system be 'free of unreasoned distinctions'" and that "indigents have an adequate opportunity to present their claims fairly." *Id.* at 612, 94 S. Ct. at 2444-45 (citations omitted). Therefore, the Court concluded that the defendant's access to the trial record, appellate briefs and opinions provided sufficient means to ensure the *pro se* litigant meaningful access to the courts. *Id.* at 614-15, 94 S. Ct. at 2446.

Because postconviction review is even further removed from the criminal trial than discretionary review, the Supreme Court in *Finley* extended its *Ross* analysis to postconviction proceedings. *See Finley*, 481 U.S. at 556-57, 107 S. Ct. at 1994. In doing so, the Court noted that postconviction proceedings are not a part of the criminal proceeding itself; rather, these proceedings are considered to be civil in nature. *Id.* at 557, 107 S. Ct. at 1994. A postconviction petition is a "collateral attack that normally occurs only after the defendant has failed to secure relief through direct review of his conviction." *Id.* States have no obligation to provide postconviction review, and when they do, neither the Due Process Clause nor the Equal Protection guarantee of meaningful access requires states to provide indigents legal representation to pursue those claims. *Id.* *Giarratano* extended the

13

rule of *Finley* to include postconviction proceedings initiated by death-sentenced inmates. *Giarratano*, 492 U.S. at 10, 109 S. Ct. at 2770-71. Thus, *Giarratano* established that death-sentenced inmates have no federal constitutional right to postconviction counsel.

The inmates argue that *Giarratano* does not preclude the relief that they seek for two reasons. First, they contend *Giarratano* was only a plurality decision. Plurality opinions are not binding on this court; however, they are persuasive authority. *Horton v. Zant*, 941 F.2d 1449, 1464 n.32 (11th Cir. 1991). The Supreme Court's holding in *Giarratano* "precludes lower courts from reaching results at odds with a narrow reading of the question before the [C]ourt." *Id.* Nonetheless, even assuming that *Giarratano* is inapplicable to their claims, the inmates ignore the significance of pre-*Giarratano* and post-*Giarratano* cases. Both *Ross* and *Finley* clearly illustrate the Supreme Court's reluctance to find a Due Process or Equal Protection right to counsel once the direct appeals process is completed. Two years after *Giarratano*, a majority of the Court in *McCleskey v. Zant*, reiterated its conclusion in *Finley* that "the right to appointed counsel extends to the first appeal of right, and no further." 499 U.S. 467, 495, 111 S. Ct. 1454, 1471 (1991) (citing *Finley*, 481 U.S. at 555, 107 S. Ct. at 1993). Finally, if the validity of *Giarratano* was still uncertain after *McCleskey*, *Coleman v. Thompson*, 501 U.S. 722, 755, 111 S. Ct. 2546, 2567 (1991), left no doubt that

14

there is no federal constitutional right to postconviction counsel. In *Coleman,* a majority of the Court explicitly stated that "*Finley and Giarratano* established that there is no right to counsel in state collateral proceedings." *Id.* The *McCleskey* and *Coleman* petitioners were both death-sentenced inmates; thus, there is no question that the rule of *Finley* applies equally to death-sentenced inmates.

Second, the inmates argue that *Giarratano* is distinguishable from the present case because Virginia's postconviction proceedings at the time the Supreme Court decided *Giarratano* were notably different than current Alabama postconviction proceedings. Specifically, the inmates allege that while no death-sentenced inmate had gone through postconviction proceedings without counsel in Virginia, seven Alabama death-sentenced inmates have recently gone through postconviction proceedings without a lawyer. Further, the inmates point to recent legal developments, including the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") of 1996, which reduced the federal habeas statute of limitations from two years to only one year, 28 U.S.C. § 2244(d)(1), and restricted the scope of review in federal habeas, 28 U.S.C. § 2254(d), and the statute of limitations for filing postconviction petitions in Alabama (also recently reduced from two years to only one year), Ala. R. Crim. P. 32.2(c).

*Giarratano*, however, established a categorical rule that there is no federal constitutional right to postconviction counsel. 492 U.S. at 11-12, 109 S. Ct. at

15

2771.  The Supreme Court in *Giarratano* made clear its dissatisfaction with a case-by-case approach to determining whether such a right exists.  *Id.*  "Our cases involving the right to counsel have never taken this tack; they have been categorical holdings as to what the Constitution requires with respect to a particular stage of a criminal proceeding in general."  *Id.* at 12, 109 S. Ct. at 2771.  Treating the question as if it were based upon a court's factual findings, the Court held, "would permit a different constitutional rule to apply in a different State if the district judge hearing that claim reached different conclusions."  *Id.*

In sum, *Finley*, *Giarratano*, and *Coleman* clearly establish that death-sentenced inmates have no federal constitutional right to postconviction counsel.  Therefore, the inmates are not entitled to relief on this claim.

3.  *Right to a Lesser Form or Alternative Form of Legal Assistance*

The inmates argue, in the alternative, if they have no federal constitutional right to counsel for the preparation and presentation of their postconviction claims, the right of access to the courts nonetheless entitles them to some lessor form of legal assistance.  However, the inmates have not identified within their complaint or briefs to this court the lessor form of legal assistance to which they are entitled.  The magistrate judge concluded that this claim is the type of deficient "protean" claim foreclosed by *Harbury*.  The magistrate judge held that the inmates failed to

16

identify any existing claim which they lost or the presentation of which was hindered within the meaning of *Lewis*.

The inmates' failure to identify a lessor form of legal assistance is fatal to their claim. Essentially, the argument is similar to their "right to counsel" claim–systemic action frustrates the inmates' ability to investigate, prepare, and file their postconviction petitions. The inmates distinguish their claims from the backward-looking "protean" allegations raised by the plaintiff in *Harbury*. They allege that their claims are forward-looking, and as such, they need only identify a "'nonfrivolous,' 'arguable' underlying claim.'" *See Harbury*, 536 U.S. at 415, 122 S. Ct. at 2187 (citation omitted). However, it is the articulation of the access claim itself with which we are concerned. In essence, it is the State's failure to provide this "lessor form of legal assistance" that frustrates the inmates' ability to investigate, prepare, and file their claims. It follows that, in order to determine whether the inmates have alleged a valid access claim, we must determine whether the lack of this "lessor form of legal assistance" denied the inmates meaningful access to the courts. We cannot do so unless the inmates identify the "lessor form of legal assistance" to which they claim they are entitled. Therefore, the inmates are not entitled to relief on this claim.

B. Sixth and Eighth Amendment Right To Postconviction Counsel

17

The inmates also contend that they have a Sixth and Eighth Amendment right to state-appointed counsel for the preparation and presentation of their postconviction claims. They allege that Sixth and Eighth Amendment requirements evolve as times change. According to the inmates, empirical evidence has emerged since *Giarratano* that erodes the Supreme Court's premise that trial and direct appeal proceedings are sufficient to ensure the reliability of capital sentences. Given the number of death sentences that have recently been reversed in appellate and postconviction proceedings,[5] the inmates claim that state postconviction proceedings are as essential in ensuring the reliability of an inmate's conviction as the inmate's direct appeal. However, neither the Sixth Amendment nor the Eighth Amendment affords the inmates the relief that they seek.

The Sixth Amendment applies only to criminal proceedings. *See Wolff v. McDonnell*, 418 U.S. 539, 576, 94 S. Ct. 2963, 2984 (1974); *see also Giarratano*, 492 U.S. at 7, 109 S. Ct. at 2769. As stated earlier, postconviction relief is not part of the criminal proceeding itself; rather, it civil in nature. *Finley*, 481 U.S. at 556-57, 107 S. Ct. at 1994. It is a collateral attack that normally occurs only after

---

[5] The inmates claim that between 1973 and 1995, 68% of death sentences obtained in state trial courts were reversed in appellate and postconviction proceedings. According to the inmates, state postconviction courts invalidated death sentences in 10% of the cases they considered. We express no opinion regarding whether these statistics are accurate.

the direct appeals process is completed and the defendant's conviction has become final. *Id.* at 557, 107 S. Ct. at 1994. Thus, the Sixth Amendment has no application to the inmates' claims for postconviction counsel. *See Giarratano*, 492 U.S. at 7-8, 109 S. Ct. at 2769; *Finley*, 481 U.S. at 555-57, 107 S. Ct. at 1993-94; *see also Bourdon v. Loughren*, 386 F.3d 88, 96 (2d Cir. 2004) ("[T]he Sixth Amendment only applies to a defendant's trial and first appeal as of right, not to appeals afforded on a discretionary basis, collateral proceedings, or civil proceedings such as civil rights claims challenging prison conditions."); *Williams v. Lockhart*, 849 F.2d 1134, 1139 (8th Cir. 1988) ("[T]he Sixth Amendment right to effective assistance of counsel does not attach to post conviction proceedings because they are civil in nature.").

As to the inmates' Eighth Amendment claims, the Supreme Court in *Giarratano* explicitly held that death-sentenced inmates have no Eighth Amendment right to state-provided legal counsel. 492 U.S. at 8-10, 109 S. Ct. at 2769-71. Recognizing that the Constitution placed special constraints on the procedures used to convict an accused of a capital offense, the Court explained that those constraints have all related to the trial stage of capital adjudication, "where the court and jury hear testimony, receive evidence, and decide the questions of guilt and punishment." *Id.* at 8-9, 109 S. Ct. at 2769-70. Heightened procedural requirements do not apply in the context of postconviction

19

proceedings. *Giarratano*, 492 U.S. at 10, 109 S. Ct. at 2770. This is because state collateral proceedings are not intended to assure the reliability of the criminal process. Rather, it is the trial stage of a capital case that assures the reliability of the process by which the death penalty is imposed. *Id.; See also Coleman*, 501 U.S. at 750, 111 S. Ct. at 2565 (applying the general requirement of cause and prejudice in a capital case); *Satterwhite v. Texas*, 486 U.S. 249, 256-58, 108 S. Ct. 1792, 1797-98 (1988) (declining to create a death penalty exception to the harmless error standard of appellate review); *Smith v. Murray*, 477 U.S. 527, 538, 106 S. Ct. 2661, 2668 (1986) (rejecting claim that the principles governing procedural default apply differently depending on the nature of the penalty imposed for violation of criminal law); *Pulley v. Harris*, 465 U.S. 37, 46-51, 104 S. Ct. 871, 877-79 (1984) (declining to hold that the Eighth Amendment required proportionality review of death sentences).

Neither the Supreme Court nor our sister circuits have withdrawn from this view since *Giarratano*. Indeed, four years after *Giarratano*, in *Herrera v. Collins*, 506 U.S. 390, 400-05, 113 S. Ct. 853, 860-63 (1993), the Court held that claims of actual innocence based on newly discovered evidence are not grounds for habeas relief, even in a capital case, absent an independent constitutional violation. Recognizing that the Eighth Amendment required increased reliability of the process by which capital punishment is imposed—the trial and sentencing

20

proceedings—the Court declined to require a different standard of review on habeas corpus for the death-sentenced petitioner. *Id.* at 405, 113 S. Ct. at 863. More recently in *Ohio Adult Parole Authority v. Woodard*, 523 U.S. 272, 281, 118 S. Ct. 1244, 1250 (1998) (plurality opinion as to Part II), the Supreme Court reiterated that distinctions accorded a life interest are primarily relevant to trial, and noted that it had generally rejected attempts to expand any distinctions further.[6] The Court also cited approvingly Justice Powell's concurrence in *Ford v. Wainwright*, 477 U.S. 399, 425, 106 S. Ct. 2595, 2610 (1986), in which Justice Powell noted that the Court's decisions imposing heightened requirements on capital trials and sentencing proceedings do not apply in the postconviction context. *Woodard*, 523 U.S. at 281-282, 118 S. Ct. at 1250. *See also Rouse v. Lee*, 339 F.3d 238, 254 (4th Cir. 2003) ("While it is undeniable that the Supreme Court has treated death differently, any distinctions between the procedures required in capital and noncapital cases 'are primarily relevant to trial,' and the Supreme Court 'has generally rejected attempts to expand any [such] distinctions further.'") (citations omitted). Therefore, we conclude that the inmates have no Sixth Amendment or Eighth Amendment right to postconviction counsel.

C.  28 U.S.C. § 2244(d)(1)(B)

---

[6] Although this portion of the opinion is a plurality decision and not binding on this court, as previously noted, it is persuasive. *See Zant*, 941 F.2d at 1464 n.32.

The inmates also argue that Alabama's failure to provide them with legal counsel or other legal assistance for purposes of filing and presenting postconviction petitions constitutes an unconstitutional impediment to their filing for federal habeas relief within the meaning of 28 U.S.C. § 2244(d)(1)(B). The district court pretermitted this question in light of its holding that there is no federal constitutional right to postconviction counsel. Therefore, this issue is not properly before us. However, if it were, the analysis above would preclude us from granting relief on this claim. Moreover, the Supreme Court's holding in *Ross* would likely preclude this claim as well. 417 U.S. at 617-18, 94 S. Ct. at 2447 (declining to find a Fourteenth Amendment duty upon states to provide counsel to indigent defendants seeking review of a conviction in federal court simply because the state had initiated criminal proceedings against the indigent). Therefore, we conclude that the inmates are not entitled to relief on this claim.

## IV. CONCLUSION

As the magistrate judge recognized, we too recognize the logic in the argument that there simply are not enough volunteer lawyers willing to undertake a full review and investigation of a case in order to initiate postconviction proceedings on behalf of a death-sentenced inmate. If we lived in a perfect world, which we do not, we would like to see the inmates obtain the relief they seek in this case. However, we are bound by United States Supreme Court precedent, as

well as our own precedent, which clearly establish that the United States Constitution does not afford appointed counsel on collateral review. For these reasons, we affirm the district court's judgment of dismissal and hold that the inmates have no federal constitutional right to counsel for the preparation and presentation of postconviction petitions.

**AFFIRMED.**