BONNIE FRED CRANFORD, Appellant, *v.* THE STATE OF NEVADA, Respondent.

No. 10187

June 20, 1979 596 P.2d 489

[Rehearing denied July 13, 1979]

*Gerald F. Neal,* Las Vegas, for Appellant.

*Richard H. Bryan,* Attorney General, Carson City; *Robert J. Miller,* District Attorney, and *H. Leon Simon,* Deputy District Attorney, Clark County, for Respondent.

## OPINION

*Per Curiam:*

Convicted by jury verdict of first degree murder, Bonnie Fred Cranford contends we must reverse because, among other things, (1) the trial court improperly admitted into evidence a videotape and testimony regarding its contents and (2) he was illegally arrested.

At 5:15 p.m. on November 11, 1976, Montena Smith entered a storefront where the Las Vegas Metropolitan Police Department was conducting a videotaped undercover fencing operation. Smith sold a late model Cadillac Seville automobile to a police sergeant for $600. The vehicle was traced to Lloyd Brooker, controller of Cashman Cadillac. Brooker's body was discovered in the desert on the following day.

During the course of the fencing transaction, the undercover officer engaged Smith in conversation to learn the circumstances of the theft and the existence of any cohorts involved in its commission. Smith informed the officer that the owner of the car was in the desert where Smith had knocked him out and that the other parties to the theft and assault of Brooker were waiting at a liquor store "down the street". The entire transaction, including the conversation, was recorded on videotape.

Shortly after the conversation was recorded, Smith, Cranford and James Lewis were arrested on an unrelated charge at a bar located near the undercover fencing operation. Subsequently, Cranford's fingerprints were lifted from the trunk lid and a door of the Cadillac which had allegedly been stolen from Brooker by Smith and his cohorts, and blood matching the type of Brooker's was found on Lewis's pants. Certain items of personal property belonging to the victim were later discovered in the possession of Lewis.

Cranford filed a pretrial motion *in limine* seeking to exclude the videotape and related testimony as inadmissible hearsay. The district judge denied the motion on the ground that the coconspirator exception to the hearsay rule might apply; but, he expressly conditioned admission of the evidence upon a showing, at trial, that a conspiracy in fact existed.[1]

1. Courts have consistently held that the admissibility of a coconspirator's statements is not predicated on a conspiracy charge. *See, e.g.,* Dutton v. Evans, 400 U.S. 74 (1970); Jasch v. State, 563 P.2d 1327 (Wyo. 1977). However, the district court properly concluded that application of the coconspirator exception is contingent upon a showing, by independent evidence, that a conspiracy existed. Fish v. State, 92 Nev. 272, 549 P.2d 338 (1976). The amount of independent evidence necessary to prove the existence of a conspiracy may be slight, and it is enough that only prima facie evidence of the fact is produced. *Id.*

Here, the existence of Cranford's fingerprints on the victim's Cadillac, which Smith sold to the undercover police officer, as well as Cranford's presence and companionship with Smith and Lewis shortly after the the transaction was completed are prima facie evidence that Cranford was involved in a conspiracy with Smith and Lewis to steal the car.[2] Thus, a sufficient foundation existed for admitting the statements made by Smith which were recorded on the videotape and which implicated Cranford in the murder of Brooker.

---

[1]NRS 51.035(3)(e) provides, in pertinent part:

" 'Hearsay' means a statement offered in evidence to prove the truth of the matter asserted unless: . . . [t]he statement is offered against a party and is: . . . [a] statement by a coconspirator of a party during the course and in furtherance of the conspiracy."

[2]We have previously held that presence, companionship and conduct after an offense are circumstances from which one's participation in the crime may be inferred. Archie v. Sheriff, 92 Nev. 613, 555 P.2d 1233 (1976).

474

2. Cranford further contends that there was no constitutional basis for his initial arrest for the unrelated charge. The constitutionality of an arrest depends upon whether the facts and circumstances known to the arresting police officer at the moment of arrest were sufficient to warrant a prudent man in believing that the accused committed an offense. Beck v. Ohio, 379 U.S. 89 (1964); Gordon v. State, 83 Nev. 177, 426 P.2d 424 (1967). Probable cause to arrest may exist when an officer believes that a suspect matches the physical description of the person who allegedly committed an offense. Nootenboom v. State, 82 Nev. 329, 418 P.2d 490 (1966). *See* Singleton v. State, 87 Nev. 53, 482 P.2d 288 (1971).

The record establishes that the arresting officer, having been informed that three suspects (Cranford, Smith and Lewis) had been loitering around a bar, investigated and found a gun in the possession of Lewis. Believing that the three suspects matched descriptions of men who had robbed a liquor store, the officer had probable cause to arrest Cranford for that robbery. "True, the officers were not certain that he was the man they were looking for, but certainty is not required—only probable cause." Nootenboom v. State, *supra,* at 336, 418 P.2d at 493.

Appellant's remaining contentions are without merit.
Affirmed.[3]

---

[3]The Chief Justice designated THE HONORABLE DAVID ZENOFF, Senior Justice, to sit in the place of THE HONORABLE E. M. (AL) GUNDERSON, who voluntarily disqualified himself in this case. Nev. Const. art. 6, § 19; SCR 243.