JOHN DAVIES, APPELLANT, v. THE STATE OF NEVADA, RESPONDENT.

No. 10390

August 17, 1979                                598 P.2d 636

*William N. Dunseath,* Washoe County Public Defender, and *Michael B. McDonald,* Deputy, Reno, for Appellant.[1]

*Richard H. Bryan,* Attorney General, Carson City, *Calvin R. X. Dunlap,* Washoe County District Attorney, *Bruce R. Laxalt,* Deputy District Attorney, Reno, for Respondent.

---

[1]Appellant had other counsel below. The public defender has argued and briefed this appeal.

## OPINION

By the Court, MANOUKIAN, J.:

Upon a jury verdict, appellant John Davies, 23, was convicted of the first degree murder of Michael Marcheschi, 19, and sentenced to life imprisonment without the possibility of parole. For the reasons expressed in this opinion, the judgment is reversed and the case remanded for a new trial.

On the evening of Wednesday, February 23, 1977, after a day of drinking beer and ingesting other intoxicants, appellant and his friend, Don Smith, 20, drove to Floriston, California to pick up a third friend, Calvin Brotzman, 17. Brotzman's parents had recently given him a new .12 gauge shotgun and he was given permission to spend the night at Smith's home in Reno and to go shooting with Smith and Davies the following morning.

Later that night, when the three young men returned to Smith's mobile home, Davies decided to use Brotzman's gun "to teach" the victim, Marcheschi, "a lesson." Marcheschi had two weeks previously supplied Davies a quantity of marijuana, allegedly for resale, for which Davies owed him one hundred dollars. Appellant and Marcheschi had engaged in similar credit transactions in the past, but apparently on this occasion Marcheschi was anxious to get his money as demands were being made on him by his own creditors. Marcheschi had not personally threatened appellant, but it was generally known among their mutual friends that Marcheschi was rather upset respecting Davies' nonpayment.

Davies wrapped the breech of the shotgun with rags and masking tape, and, at approximately 2:30 a.m. Thursday morning, he and Brotzman drove to Marcheschi's home in Sparks. Their arrival was hardly a quiet one. A neighbor testified that at around the time in question she heard a car drive up with the stereo turned up loud and come to a stop in the cul-de-sac where the victim lived.

Moments later, officers responded to another neighbor's call that gunshots had been fired at 1445 Dodson Way. Appellant and Calvin Brotzman were arrested later that morning for the murder of Michael Marcheschi. Both the suspects gave statements to the police. Brotzman was subsequently released on bail but died prior to trial.

Davies did not testify at trial. The theory of his defense was that the killing was without deliberation and premeditation. He thereby sought to lessen the degree of his culpability from first degree murder to second. NRS 200.030. His statements to the police were introduced in evidence against him. In his second statement, appellant admitted the homicide. He stated that he and Brotzman climbed a fence into Marcheschi's backyard and proceeded to the victim's bedroom window. Appellant aimed the gun and yelled, "Surprise." When Marcheschi awakened and came to the window to see what appellant and Brotzman wanted, appellant motioned him to come to the backdoor. Marcheschi proceeded to do so, and as he opened the kitchen door, he said through the screen door to appellant, "You are going to get it." At that point, Brotzman fled back to the car. As Marcheschi attempted to open the screen door and come out of the house, Davies asserted he "got spooked" and attempted to level the gun. The weapon discharged, firing at least one charge through the door and into the victim's chest and abdominal area. The impact of the shot at such close range (6 to 10 feet) pushed the victim backwards into the house. In a panic, appellant picked up the expended cartridge, jumped the fence and together with Brotzman, drove away. When they returned to the scene a few hours later, the police had already arrived and were investigating the area. Appellant did not turn himself in at that time.

Marcheschi managed to carry himself to a neighbor's house where the police and an ambulance were summoned. The victim retained consciousness long enough to name appellant as his assailant.[2]

Such was the nature of the evidence against Davies. Others testified concerning statements appellant allegedly made, including a comment to Smith on the day of the shooting that he had to shoot someone. A drawing Davies purportedly made depicting the location of the victim's bedroom in relation to the remainder of the Marcheschi home was also discovered and introduced at trial.

Much of the essential evidence of premeditation and deliberation, however, was supplied by the testimony of Detective Terry Lee Rusk, a Sparks Police Officer, who took the statement of Calvin Brotzman. Brotzman's statement, as related by

---

[2]The neighbor testified without objection that a shot from the Marcheschi house woke him up between 2:30 and 2:40 a.m. He met the victim lying at his front door, holding his side, bleeding profusely, and brought him inside. Another neighbor arrived and asked Marcheschi, "What happened?" "Who did this?" Marcheschi replied, "John Davies did it." When asked why, Marcheschi allegedly said, "He owes me $100."

Rusk, in large part confirmed much of what Davies had said, but also contained sufficient evidence of deliberation and premeditation which, if believed by the jury, would have overcome appellant's contention that the shooting was accidental. Thus, the detective testified without objection, "He [Brotzman] stated that *the plan* was that he was to rap at the window; the victim, Michael Marcheschi, was to look out the window; and John Davies was going to shoot him." (Emphasis added.) However, according to Rusk's recollection of the statement, when Marcheschi came to the window, the gun jammed because the safety was engaged. Brotzman then ran back to the car. As he was climbing over the fence, he heard what must have been the fatal shot.

At that point in the detective's testimony, the trial judge, *sua sponte,* stopped the questioning and expressed his concern over what he accurately perceived as a violation of the rule announced in Bruton v. United States, 391 U.S. 123 (1968). Out of the jury's presence, appellant's trial counsel agreed[3] and objected to any further testimony relating to Brotzman's statement unless it could be shown that the statement was made under oath and recorded, counsel apparently mistakenly

---

[3]Counsel stated:

> My understanding is [that] in the statement [Brotzman] was not under oath. So I'm going to object to *any further statements* by Mr. Brotzman, whether written or oral, unless they were under oath or have *some degree of truthfulness,* or otherwise bring him forth so that I can cross-examine him.

The court then said:

> . . . My concern, and the reason I had the jury go out of here, is because of the potential constitutional problems with a co-defendant's statements. . . .

Trial counsel reiterated his objection:

> Your honor . . . I . . . object to any further testimony from [Detective Rusk] regarding Brotzman['s statement] unless it can be shown that the statement is under oath.
>
> . . . . .
> I'll take the brunt of what's happened so far.
>
> . . . . .
> . . . I think it's my responsibility as to making this objection before. However, there was some method to our madness at that point. But I think we will, in order to protect his rights, the rights of this defendant, I'm going to object to any further . . . statements made by Mr. Brotzman unless there is some degree of trustworthiness attached to them. . . .
> (Emphasis added.)

The jury was returned to the courtroom. Detective Rusk was excused. No cautionary or limiting instruction was given the jury.

believing that that would resolve the *Bruton* problem. The trial court sustained the objection, but no cautionary instruction was sought, and none was given; and, in our view, such an instruction could not, in the context of this case, have served as "an adequate substitute for [appellant's] constitutional right of cross-examination." Bruton v. United States, 391 U.S. at 137.

Urging reversal, appellant claims his constitutional right to confront adverse witnesses was violated by Detective Rusk's testimony concerning statements and confessions made to him by the deceased accomplice Brotzman. We are constrained to agree.

In Bruton v. United States, the Supreme Court held that the defendant's inability to cross-examine a nontestifying co-defendant about his implicating confession violated defendant's Sixth Amendment right of confrontation even though the jury was instructed that the confession was only to be considered as evidence against the co-defendant. Bruton and one Evans were charged with armed postal robbery, a federal offense. 18 U.S.C. § 2114. In their joint trials, a postal inspector testified that Evans (the co-defendant) orally confessed to him that he and Bruton committed the crime. There, as here, no conspiracy was charged or independently proved, *cf.* Dutton v. Evans, 400 U.S. 74 (1970) (conspiracy proved), and the references to Bruton in Evans' confession were not deleted. *See* United States v. Roach, 590 F.2d 181, 185 (5th Cir. 1979), United States v. Gaines, 563 F.2d 1352 (9th Cir. 1977). Neither Evans nor Bruton took the stand, and both were convicted. In reversing Bruton's conviction, the high Court said:

> Here, Evans' oral confessions were in fact testified to, and were therefore actually in evidence. That testimony was legitimate evidence against Evans and to that extent was properly before the jury during its deliberations. Even greater, then, was the likelihood that the jury would believe Evans made the statements and that they were true—*not just the self-incriminating portions but those implicating petitioner as well. Plainly, the introduction of Evans' confession added substantial, perhaps even critical, weight to the Government's case in a form not subject to cross*-examination, since Evans did not take the stand. Petitioner was thus denied his constitutional right of confrontation.

Bruton v. United States, 391 U.S. at 127–28 (emphasis added). Quoting from Justice Frankfurter's dissent in an earlier case, the Court went on to say, "The government should not have the windfall of having the jury be influenced by evidence

against a defendant which, as a matter of law, they should not consider but which they cannot put out of their minds." *Id.* at 129, *quoting* Delli Paoli v. United States, 352 U.S. 232, 248 (1957) (Frankfurter, J., dissenting). The Court found a concededly clear instruction to the jury to disregard Evans' inadmissible hearsay confession, insofar as it implicated Bruton, to be an inadequate substitute for Bruton's constitutional right of cross-examination.

Likewise, here, Brotzman's remarks to the police were inadmissible hearsay as against Davies, and it is not contended that the remarks were admissible on any theory of joint criminal venture or conspiracy. *Cf.* Cranford v. State, 95 Nev. 471, 596 P.2d 489 (1979). Clearly, Brotzman's statements "added substantial, perhaps critical, weight to the [state's] case in a form not subject to cross-examination. . . ." Bruton v. United States, 391 U.S. at 127–28. Davies was thus denied his constitutional right of confrontation. United States v. Di Rodio, 565 F.2d 573, 576 (9th Cir. 1977).

However, not every violation of the right of confrontation mandates reversal. Therefore, where the independent evidence of guilt is truly overwhelming and the improperly admitted evidence cumulative, the resulting conviction will not be reversed. Brown v. United States, 411 U.S. 223, 230–32 (1973); Schneble v. Florida, 405 U.S. 427, 430–32 (1972); Harrington v. California, 395 U.S. 250, 253–54 (1969). *See also* United States v. Bobo, 586 F.2d 355 (5th Cir. 1978).

The state concedes that had proper and timely objection to the detective's testimony been made, it would have been sustained. Nevertheless, it argues that trial counsel's failure to object earlier to Rusk's damning testimony regarding Brotzman's remarks constitutes a waiver of the objection. We disagree. The Supreme Court did not require a proper motion to preserve the constitutional rights involved in *Bruton* and neither will we. *See* United States v. Marks, 585 F.2d 164 (6th Cir. 1978).[4] Furthermore, in Roberts v. Russell, 392 U.S. 293

---

[4]Because of our holding on this issue, we find it unnecessary to reach appellant's claim that his trial counsel was inadequate and ineffective.

Even if we were to accept the state's argument that the objection was waived, we fail to perceive any possible theory of trial strategy or tactics which would justify a knowing failure to object to the detective's testimony. *See* Douglas v. Alabama, 380 U.S. 415 (1965). So far as we can discern from this record, trial counsel's supposed decision to waive this valid evidentiary and constitutional objection, *cf.* Barker v. State, 95 Nev. 309, 594 P.2d 719 (1979) (on appeal, counsel did not challenge admission of testimony), was not tactically motivated and was completely ill advised. *See* People v. Ibarra, 386 P.2d

(1968), the high court held that the *Bruton* doctrine was applicable to the states and was to be given retroactive effect, thereby strongly indicating that a *Bruton* violation may deprive an accused of substantive due process. Here, the error was "both obvious and substantial," Sykes v. United States, 373 F.2d 607, 612 (5th Cir. 1966), and we cannot say that the properly admitted evidence of deliberation and premeditation was overwhelming or that the error was harmless beyond a reasonable doubt. *Cf.* Harrington v. California, 395 U.S. at 254 (statements of co-conspirators merely cumulative and other evidence overwhelming).

Accordingly, the judgment is reversed.

MOWBRAY, C. J., and THOMPSON, GUNDERSON, and BATJER, JJ., concur.

487 (Cal. 1963), where the record revealed defense counsel's ignorance of fundamental evidentiary rules.

In Garner v. State, we stated:

As a general rule, the failure to object, . . . will preclude appellate consideration. . . . However, where the errors are patently prejudicial and inevitably inflame or excite the passions of the jurors against the accused, the general rule does not apply. . . . An accused, whether guilty or innocent, is entitled to a fair trial, and it is the duty of the court and the prosecutor to see that he gets it.

Garner v. State, 78 Nev. 366, 372–73, 374 P.2d 525, 529 (1962) (citations omitted).