[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCT 5, 2010
JOHN LEY
CLERK

No. 10-11679
Non-Argument Calendar
_____

D.C. Docket No. 4:10-cv-00010-RH-WCS

DUKE F. CRANFORD,

Plaintiff-Appellant,

versus

NEVADA DEPARTMENT OF CORRECTIONS,
in its Official Capacity,
WALTER A. MCNEIL,
in Official and Individual Capacity,
HOWARD SKOLNIK,
in Official and Individual Capacity,
FLORIDA DEPARTMENT OF CORRECTIONS,
in its Official Capacity,

Defendants-Appellees,

H. CANNON,
Sergeant in Official and Individual Capacity, et al.,

Defendants.

Appeal from the United States District Court
for the Northern District of Florida

_____

(October 5, 2010)

Before EDMONDSON, MARTIN and FAY, Circuit Judges.

PER CURIAM:

Duke F. Cranford, a state prisoner who was convicted of first-degree murder in Nevada, but is imprisoned in Florida pursuant to an interstate agreement, appeals from the district court's *sua sponte* dismissal of his civil rights complaint for failure to state a claim on which relief may be granted, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). On appeal, Cranford argues that the court erred in dismissing his complaint because the defendants deprived him of the ability to conduct legal research using Nevada state legal materials, in violation of his constitutional right to have access to the courts. Cranford further argues that this constitutional violation caused him actual injury, as his inability to conduct legal research impeded his ability to challenge his 1977 state murder conviction, as well as several additional state convictions that he sustained in 1983. As further evidence of actual injury, Cranford contends that his lack of access to Nev.R.App.P. 3(a)(2) resulted in jurisdictional defects in his appeal to the Nevada Supreme Court from

the denial of post-conviction relief by the Eighth Judicial District Court for Clark County, Nevada ("county court"). Finally, Cranford argues that, in recommending that the court dismiss his complaint, the magistrate judge resolved factual disputes in favor of the defendants, and raised arguments on the defendants' behalf, rather than requiring them to respond to the complaint. Thus, Cranford contends, the magistrate violated the principle of judicial neutrality, as well as his right to equal protection.

For the reasons set forth below, we affirm.

## I.

In January 2010, Cranford, proceeding *pro se*, filed a complaint against various defendants, and subsequently filed a motion for leave to proceed *in forma pauperis* ("IFP"). The magistrate judge granted Cranford's motion to proceed IFP.

In February 2010, Cranford filed an amended complaint, naming the following defendants: (1) the Florida Department of Corrections ("FDC"); (2) the Nevada Department of Corrections ("NDC"); (3) Walter A. McNeil, Secretary of the FDC, in his official and individual capacity; and (4) Howard Skolnik, Director of the NDC, in his official and individual capacity. Cranford specified that he brought his claims against these defendants pursuant to 42 U.S.C. § 1983.

3

In his complaint, Cranford explained that, on August 1, 1994, the NDC, acting pursuant to an interstate agreement, transferred him into the custody of the FDC. Cranford further explained that, since he had been under the FDC's custody, he had filed "numerous petitions, motions, and applications" concerning his conviction in Nevada state court, and, on each occasion, his attempt was unsuccessful because he lacked access to Nevada state research materials, such as case reporters, statutes, and court rules. In his most recent attempts to challenge his conviction, he had filed a "Motion to Vacate and Set Aside" his conviction, and a "Motion to Correct Fraud on the Court," in the county court. Cranford's motion to vacate had been denied by the county court based on state rules and cases to which Cranford lacked access. In his complaint, Cranford further asserted that he had requested that the FDC provide him with the materials necessary to research Nevada case law, statutes, and rules so that he could file a reply to the state's opposition to his motion to set aside his conviction. The FDC law librarian, however, had informed him that the FDC did not possess these materials.

Cranford had appealed the county court's denial of his motions to the Nevada Supreme Court, and, on September 15, 2009, the Supreme Court had issued a "Notice of Deficiency" as to his appeal. Cranford subsequently filed another notice of appeal, and on December 1, 2009, the Supreme Court issued

4

another notice of deficiency. In both of these notices, the Supreme Court had relied on Nev.R.App.P. 3(a)(2), a rule to which Cranford lacked access.

Based on the facts described above, Cranford asserted that the defendants had denied him access to legal materials that could affect his attempts to attack his conviction, in violation of his Fourteenth Amendment right to have meaningful access to the courts. Cranford specified that the FDC had failed to provide him with access to Nevada court reporters, the Pacific Reporter, Pacific Digests, and the rules for the county court and the Nevada Rules of Appellate Procedure. Cranford asserted that the NDC and its Director, Skolnik, were liable for this violation of his constitutional rights because he was imprisoned pursuant to their authority. Cranford further claimed that the FDC and its Secretary, McNeil, were also liable for the constitutional violation because they had custodial authority over him.

Cranford attached exhibits to his complaint. These exhibits included Cranford's motion to vacate and set aside his conviction, which he filed in June 2009 in the county court. In this motion, Cranford explained that, in 1977, he was tried by a jury for first-degree murder in the county court. He alleged that, during a pre-trial suppression hearing, the trial court erred by granting the state's motion to introduce into evidence a videotape, in which Cranford's codefendant, Montena

Smith, made inculpatory statements to an undercover detective. Cranford explained that, because his trial was severed from Smith's trial, he objected to the admission of the videotape on the basis that it constituted hearsay, and that he was unable to cross-examine Smith regarding his inculpatory statements. The state, however, persuaded the court to admit the videotape by arguing that Smith's recorded statements were made in furtherance of a conspiracy, and thus fell within the hearsay exception codified at Nev. Rev. Stat. § 51.035(3)(e). Cranford alleged that, in arguing that the court should admit this videotape under this exception to the hearsay rule, the state misrepresented to the court that it would present evidence that Cranford and Smith were involved in the same conspiracy at the time that the videotape was made. Cranford stated that, at the conclusion of the evidence in his trial, the trial court informed the state that it had failed to present evidence of a conspiracy between Cranford and Smith, and that it thus would not be permitted to argue that there was a conspiracy between them during closing statements. The trial court, however, refused to grant Cranford's motion for a mistrial based on the admission of the videotape.

In his motion to vacate, Cranford had argued that, by misrepresenting to the court that the state had evidence of a conspiracy between Cranford and Smith, the state prosecutor perpetrated "fraud on the court," and this fraud seriously

6

impugned the integrity of Cranford's trial. Cranford asserted that the county court should set aside his conviction, as it was the product of fraud on the court, and the introduction of the videotape amounted to a "manifest injustice." Moreover, Cranford contended that, because his conviction resulted from fraud, his motion to vacate should not be dismissed as time-barred, or as a successive habeas petition.

Cranford's exhibits also included the state's response to his motion to vacate. In its response, the state explained that a jury had convicted Cranford of first-degree murder in 1977, and that Cranford had been sentenced to a term of life imprisonment. The state recounted the procedural history of Cranford's case, noting that Cranford's conviction had been affirmed by the Nevada Supreme Court on direct appeal, and that Cranford's four subsequent habeas petitions had been denied. The state also noted that, in April 2009, Cranford had filed a "Motion to Correct Fraud on the Court" in the county court, and the court had denied this motion. The state characterized Cranford's motion to vacate as a motion for the county court to reconsider its denial of his "Motion to Correct Fraud on the Court." Relying on Nevada court rules, the state argued that the court should deny Cranford's motion to vacate because it constituted an impermissible attempt to relitigate matters that already had been decided.

Cranford's exhibits also included pleadings filed by the state in opposition to other post-conviction motions that Cranford had filed in county court. These pleadings demonstrated that the state typically relied on Nevada Supreme Court cases and procedural rules in opposing Cranford's motions.

Cranford's exhibits also included a FDC inmate request form, completed on October 19, 2009, in which Cranford requested copies of two Nevada Supreme Court cases and Nev.R.App.P. 3(a)(2). On this same form, a FDC official responded that the FDC libraries did not possess these materials. The official instructed Cranford that, in order to obtain these materials, he was required to follow the procedures set forth in "Ch. 33-501.301(6)(c)."

Finally, Cranford's exhibits included two county court documents labeled "Notice of Deficiency," which were dated September 15, 2009, and December 1, 2009, respectively. Both of these notices stated, "Your appeal *has* been sent to the [Nevada] Supreme Court." Both of these notices also stated that the "Notice of Entry of Order," had not been transmitted and, in explanation of this deficiency, cited to Nev.R.App.P. 3(a)(2). The notices also included the following text from Rule 3(a)(2):

> The district court clerk must file appellant's notice of appeal despite perceived deficiencies in the notice, including the failure to pay the district court or Supreme Court filing fee. The district court clerk shall

> apprise appellant of the deficiencies in writing, and shall transmit the notice of appeal to the Supreme Court in accordance with subdivision (e) of this Rule with a notation to the clerk of the Supreme Court setting forth the deficiencies. Despite any deficiencies in the notice of appeal, the clerk of the Supreme Court shall docket the appeal in accordance with Rule 12.

The notices directed Cranford "to refer to Rule 3 for an explanation of any possible deficiencies."

Before any of the defendants answered the complaint, the magistrate judge *sua sponte* recommended that the court dismiss Cranford's complaint for failure to state a claim on which relief may be granted, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). In its report and recommendation, the magistrate determined that Cranford's access-to-the-courts claim was based on the First Amendment to the U.S. Constitution. The magistrate found that Cranford's exhibits showed that, when he requested certain materials from the FDC's law library, the FDC responded that he would need to procure these materials by following the procedures set forth in Fla. Admin. Code Ann. r. 33-501.301(6)(c). The magistrate reproduced the text of Rule 33-501.301(6)(c), which provided that an inmate who wished to secure legal materials that were not in the FDC's libraries must submit a request for the materials to the library services administrator for approval. In his request, the inmate was required to "include the full and complete

citation of the material needed."  Without discussion, the magistrate concluded that this rule "plainly show[ed] that [Cranford] has reasonable access to Nevada legal materials."  The magistrate found that Cranford did not allege that he had made an interlibrary loan request, or that such a request was denied.

The magistrate additionally found that Cranford had failed to show that he sought to pursue a nonfrivolous underlying legal claim.  The magistrate determined that the underlying claim that Cranford sought to pursue before the Nevada state courts was set forth in his motion to set aside his conviction.  The magistrate noted that the Nevada Supreme Court had affirmed Cranford's conviction on direct appeal in *Cranford v. State*, 596 P.2d 489 (Nev. 1979), and explained that this decision showed that, on direct appeal, Cranford had raised the same arguments set forth in his 2009 motion to vacate.  The magistrate further found that any claim that Cranford presently wished to pursue before the Nevada state courts was "undoubtedly barred" under Nevada law.  Relying on Nev. Rev. Stat. § 34.726, the magistrate explained that, absent a showing of good cause for a delay, a Nevada state prisoner was required to bring a petition challenging the validity of his judgment or sentence within one year of the entry of the judgment, or within one year after the Nevada Supreme Court issued a "remittitur."

10

In addition, the magistrate determined that, to the extent that Cranford sought to raise the same claims in his motion to vacate that he previously had raised in state habeas petitions, these claims were "successive and [would] not be heard." To the extent these claims were new, the magistrate reasoned that they would be procedurally barred. For the above reasons, the magistrate found that Cranford had failed to show that he had been impeded in pursuing a nonfrivolous underlying claim. Accordingly, the magistrate concluded that Cranford had failed to state a court-access claim upon which relief could be granted, and recommended that the court dismiss Cranford's complaint under § 1915(e)(2)(B)(ii).

Cranford filed objections to the magistrate's report and recommendation. In his objections, Cranford, relying on the U.S. Supreme Court's decision in *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), *limited by Lewis v. Casey*, 518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996), argued that a prisoner's right of access to the courts includes the right to conduct legal research. Cranford asserted that the legal materials in the possession of the FDC were insufficient to enable him to attack his conviction, as they pertained only to Florida law. Cranford further asserted that, after he received the magistrate's report and recommendation, he had verified with a FDC librarian that the FDC did

not have a system whereby a prisoner could conduct research using Nevada legal materials. Cranford explained that, in order for him to use the interlibrary loan program, he would need to request specific case citations or statutes, and that he could not obtain these citations or statutes without first conducting research. Cranford also argued that his claim of fraud on the trial court was meritorious, and that a claim of fraud was not subject to a one-year time limit. Cranford contended that his failure to prevail on his fraud claim in state court was due to his inability to conduct research using Nevada legal materials.

Cranford attached an exhibit to his objections to the report and recommendation. This exhibit was a second FDC inmate request form, completed on March 10, 2010, in which Cranford requested "legal material to research [his] Nevada conviction," and specified that he did not know the specific case citations or statutes that he would need. Cranford inquired as to whether the FDC had a system by which he could research Nevada legal materials. On this same form, a FDC library official responded that "Florida does not have any or cannot get you any material you need unless you know exactly what cases you need."

The court entered an order adopting the magistrate's report and recommendation, and dismissing Cranford's complaint pursuant to § 1915(e)(2)(B).

## II.

Pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), which is part of the Prison Litigation Reform Act ("PLRA"), an IFP complaint shall be dismissed at any time, if the court determines that it fails to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii). We review a district court's *sua sponte* dismissal of a complaint for failure to state a claim, pursuant to § 1915(e)(2)(B)(ii), *de novo*, using the same standards that govern dismissals under Fed.R.Civ.P. 12(b)(6). *Mitchell v. Farcass*, 112 F.3d 1483, 1489-90 (11th Cir. 1997). When reviewing a court's dismissal of a complaint pursuant to Rule 12(b)(6), we accept the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff. *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003). In addition, we liberally construe a *pro se* litigant's pleadings. *Powell v. Lennon*, 914 F.2d 1459, 1463 (11th Cir. 1990).

"A motion to dismiss is granted only when [it appears] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Castro v. Sec'y of Homeland Sec.*, 472 F.3d 1334, 1336 (11th Cir. 2006) (quotation omitted). In addition, "[w]hile a complaint . . . does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions." *Bell Atl. Corp. v.*

13

*Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007) (quotation and alteration omitted). Pursuant to Fed.R.Civ.P. 8(a)(2), the plaintiff must make a plain statement demonstrating his right to relief. *Id.* at 557, 127 S.Ct. at 1966. In order to satisfy Rule 8's pleading requirements, the plaintiff must allege facts sufficient to "show" a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. ___, ___, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009).

"The analysis of a 12(b)(6) motion is limited primarily to the face of the complaint and attachments thereto." *Brooks v. Blue Cross and Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1368-69 (11th Cir. 1997). Nevertheless, a court may take judicial notice "of the state and federal court proceedings in which [the prisoner] was convicted or attacked his conviction." *See Cunningham v. Dist. Attorney's Office for Escambia Cnty.*, 592 F.3d 1237, 1255 (11th Cir. 2010).

Access to the courts is a constitutional right that is grounded in several constitutional amendments, including the First Amendment and the Fourteenth Amendment. *Chappell v. Rich*, 340 F.3d 1279, 1282 (11th Cir. 2003); *see also Barbour v. Haley*, 471 F.3d 1222, 1224 n.2 (11th Cir. 2006) (noting that the prisoners' claim that they had been denied meaningful access to the courts implicated both the First and Fourteenth Amendments). In *Bounds*, the U.S. Supreme Court held that the "right of access to the courts requires prison

authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." 430 U.S. at 828, 97 S.Ct. at 1498. In explaining the importance of providing prisoners with law libraries or other forms of legal assistance, the Supreme Court stated:

> If a lawyer must perform [] preliminary [legal] research, it is no less vital for a *pro se* prisoner . . . . Moreover, if the State files a response to a *pro se* pleading, it will undoubtedly contain seemingly authoritative citations. Without a library, an inmate will be unable to rebut the State's argument. It is not enough to answer that the court will evaluate the facts pleaded in light of the relevant law.

*Id.* at 825-26, 97 S.Ct. at 1497.

In *Lewis*, the Supreme Court clarified that, although prison law libraries and legal assistance programs are "one constitutionally acceptable method to assure meaningful access to courts," they are not ends in themselves. *Lewis*, 518 U.S. at 351, 116 S.Ct. at 2180 (quotation omitted). "The inquiry is [] whether law libraries or other forms of legal assistance are needed to give prisoners a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Bounds*, 430 U.S. at 825, 97 S.Ct. at 1496.

"[I]n order to assert a claim arising from the denial of meaningful access to the courts, an inmate must [] establish an actual injury." *Barbour*, 471 F.3d at

15

1225.  "Actual injury may be established by demonstrating that an inmate's efforts to pursue a nonfrivolous claim were frustrated or impeded by a deficiency in the prison library or in a legal assistance program." *Id.*  The actual-injury element requires that "the plaintiff must identify within his complaint, a nonfrivolous, arguable underlying claim." *Id.* at 1226 (citation omitted).  In other words, the plaintiff must show that he has more than a mere "hope" of obtaining relief on the underlying claim.  *See Cunningham*, 592 F.3d at 1271.  In addition, the prisoner must show that that his underlying nonfrivolous claim was raised, or would have been raised, in connection with a direct appeal, a collateral attack on his conviction, or a civil rights action.  *See Lewis*, 518 U.S. at 355, 116 S.Ct. at 2182.

Under Nevada state law, any person under a sentence of imprisonment who believes that his conviction was obtained in violation of state or federal law may file a petition for a writ of habeas corpus.  Nev. Rev. Stat. § 34.724(1) (2009).  Generally, a prisoner must file a habeas petition "within [one] year after entry of the judgment of conviction or, if an appeal has been taken from the judgment, within [one] year after the Supreme Court issues its remittitur."  Nev. Rev. Stat. § 34.726(1) (2009).  A prisoner may file a petition after this time period expires only if he demonstrates good cause for the delay, that the delay was not his fault, and that the dismissal of the petition as untimely would result in undue prejudice.

16

*Id.* The habeas-petition process "[c]omprehends and takes the place of all other common-law, statutory or other remedies which have been available for challenging the validity of the conviction or sentence, and must be used exclusively in place of them." Nev. Rev. Stat. § 34.724(2)(b). Where a Nevada state prisoner files a motion challenging the validity of his conviction, the motion is properly construed as a habeas petition, and the procedural time-bar set forth in § 34.726 applies. *Hathaway v. State*, 71 P.3d 503, 507 n.13 (Nev. 2003).

In addition, Nevada law directs that a court shall dismiss a successive habeas petition if: (1) the defendant's conviction resulted from a trial, and he could have filed his present claims before the trial court, on direct appeal, or in a previous habeas petition, but failed to do so; or (2) the defendant fails to allege new or different grounds for relief, and the claims he presently asserts have already been decided on the merits in another proceeding. *Bejarano v. State*, 146 P.3d 265, 269-70 (Nev. 2006) (relying on Nev. Rev. Stat. § 34.810(1)(b) and (2) (2009)). A petitioner may overcome these procedurals bars on successive habeas petitions only by showing good cause and prejudice, or that applying a procedural bar would result in a fundamental miscarriage of justice. *Id.* at 270; Nev. Rev. Stat. § 34.810. A petitioner may demonstrate a fundamental

miscarriage of justice by "mak[ing] a colorable showing he is actually innocent of the crime." *Pellegrini v. State*, 34 P.3d 519, 537 (Nev. 2001).

Furthermore, the Nevada Supreme Court has held that the law-of-the-case doctrine bars a habeas petitioner from raising a claim in a habeas petition that already has been considered on direct appeal. *State v. Haberstroh*, 69 P.3d 676, 686 (Nev. 2003). In so holding, the court explained that, "[t]he law of a first appeal is the law of the case in all later appeals in which the facts are substantially the same, and that law cannot be avoided by more detailed and precisely focused argument made after reflecting upon previous proceedings." *Id.*

As an initial matter, we do not consider Cranford's argument that his inability to access Nevada legal materials prevented him from attacking his 1983 convictions, as Cranford failed to raise this claim, or mention his 1983 convictions, in his complaint. *See Miller v. King*, 449 F.3d 1149, 1150 n.1 (11th Cir. 2006) (holding that, because the *pro se* plaintiff failed to raise a claim under the Rehabilitation Act, we would not consider this claim for the first time on appeal).

The magistrate did not cite to any legal support, or provide an explanation, for the conclusion that the FDC's interlibrary loan system, as described in Cranford's complaint and exhibits and set forth in Fla. Admin. Code Ann. r.

18

33-501.301(6)(c), clearly demonstrated that Cranford had reasonable access to Nevada legal materials. Specifically, the magistrate failed to explain how, in light of *Bounds*'s discussion of the importance of a *pro se* prisoner's ability to conduct legal research, the interlibrary loan system described by Cranford met constitutional demands. *See Bounds*, 430 U.S. at 825-26, 97 S.Ct. at 1497. Although Fla. Admin. Code Ann. r. 33-501.301(6)(c) may have shown that Cranford could obtain a Nevada case or statute if he was aware of its citation, this rule did not show that Cranford had the ability to conduct legal research using Nevada legal materials.[1]

Nevertheless, the district court did not err in *sua sponte* dismissing Cranford's complaint for failure to state a claim on which relief may be granted, pursuant to § 1915(e)(2)(B)(ii), because Cranford failed to identify a nonfrivolous underlying claim. *See Barbour*, 471 F.3d at 1225-26. While Cranford generally alleged that the FDC's library system had impeded every effort he had made to

---

[1] In this regard, we note that at least two circuit appellate courts have indicated that the type of interlibrary loan system described by Cranford may not meet constitutional demands. *See Trujillo v. Williams*, 465 F.3d 1210, 1214, 1218, 1226 (10th Cir. 2006) (holding that the district court erred in dismissing the prisoner's access-to-the-courts claim, as his allegation that he could not obtain state research materials without first providing an exact legal citation for the material he desired "may state a viable claim of denial of access to the courts"); *Corgain v. Miller*, 708 F.2d 1241, 1244, 1250 (7th Cir. 1983) (noting that a prison's library system had not satisfied constitutional demands because "the inmate could obtain state law materials only by providing precise citations, and could obtain precise citations only if he could refer to state law materials").

19

attack his murder conviction since 1994, this claim lacked sufficient specificity to survive dismissal. *See Twombly* 550 U.S. at 555, 127 S.Ct. at 1964-65. Cranford's assertions to this effect were conclusory, as he failed to describe any nonfrivolous claims that he presented in these motions and petitions, and failed to explain how his inability to access Nevada legal materials impeded his ability to litigate any claims he may have raised. Accordingly, to the extent that Cranford sought relief based on the theory that he lacked access to the court in connection with every post-conviction motion and petition that he had filed while he was in the custody of the FDC, this claim was properly dismissed. *See Christopher*, 536 U.S. at 415, 122 S.Ct. at 2186-87.

As the magistrate noted, the only allegedly nonfrivolous claim that Cranford specifically described in his complaint and attached exhibits was his 2009 motion to set aside or vacate his conviction, which he had filed in county court. The claim set forth in Cranford's motion to vacate and set aside, however, was frivolous, as it lacked arguable merit under Nevada state law for several reasons.

Under Nevada law, Cranford's motion to vacate constituted a habeas petition, as it was a post-conviction collateral attack that asserted that his

20

conviction was invalid.[2]  Nev. Rev. Stat. § 34.724(2)(b); *Hathaway*, 71 P.3d at 507

n.13.  As a result, it was subject to Nevada statutes governing habeas petitions.

*See Hathaway*, 71 P.3d at 507 n.13.  Under these statutes, Cranford's 2009

petition appears to be untimely, as it was filed approximately 30 years after the

Nevada Supreme Court affirmed his conviction in 1979, and he did not allege

good cause for his delay.  Nev. Rev. Stat. § 34.726(1); *Cranford*, 596 P.2d at 489.

Moreover, in his direct appeal to the Nevada Supreme Court, Cranford

asserted essentially the same claim that he set forth in his motion to vacate—that

the trial court erred by permitting the state to introduce the videotape of Smith's

statements into evidence pursuant to the co-conspirator exception to the hearsay

rule.  *See Cranford*, 596 P.2d at 490.  The Nevada Supreme Court rejected this

claim on the merits, holding that there was a sufficient basis for the admission of

this evidence.  *Id*.  As a result, Cranford's attempt to relitigate this issue in a

post-conviction motion was barred by the law-of-the-case doctrine, and the fact

---

[2] While Nevada law excepts limited categories of motions from its general rule that a post-conviction collateral attack qualifies as a habeas proceeding, Cranford's motion to vacate did not fall within any of these exceptions.  *See McConnell v. State*, 212 P.3d 307, 310 n.2 (Nev. 2009) (noting that the only remedies not supplanted by habeas corpus proceedings are direct review, a motion to correct an illegal sentence, a motion to modify a sentence, a motion to withdraw a guilty plea, and a motion for a new trial based on newly discovered evidence).  Thus, while Cranford appears to argue, in his brief on appeal, that the magistrate erred by characterizing his motion to vacate as a habeas petition, Cranford's arguments in this regard lack merit.

21

that Cranford re-characterized this claim as "fraud on the court" in his motion to vacate would not free him from the operation of the law-of-the-case doctrine. *Haberstroh*, 69 P.3d at 686.

Finally, Cranford made clear in his complaint, and in his attachments to the complaint, that he had filed numerous post-conviction motions and petitions challenging his 1977 conviction, and, as result, it appears that his motion to vacate constituted a successive habeas petition. *See* Nev. Rev. Stat. § 34.810(1)-(2). Thus, to the extent that Cranford's fraud-on-the-court claim could be considered to be a new claim, or a reassertion of a claim that was previously raised, it would be procedurally barred absent a showing of cause and prejudice, or a fundamental miscarriage of justice. *See Bejarano* 146 P.3d at 269-70; Nev. Rev. Stat. § 34.810(1)(b) and (2). In his motion to vacate, Cranford did not make any assertion related to cause and prejudice. Moreover, while Cranford asserted that the introduction of the videotape into evidence influenced the jury and constituted "manifest injustice," he did not make a "colorable showing" that he was actually innocent, nor did he allege that he could show that he was actually innocent. *See Pellegrini*, 34 P.3d at 537. Because Cranford's motion to vacate did not adequately allege cause and prejudice or a fundamental miscarriage of justice, the

22

fraud claim set forth in this motion was procedurally barred. *See Bejarano*, 146 P.3d at 269-70; Nev. Rev. Stat. § 34.810(1)(b) and (2).

For all of the above reasons, the underlying claim that Cranford sought to litigate lacked arguable merit under Nevada law, and he thus failed to allege adequately that FDC's constitutionally inadequate library system actually injured him in connection with his motion to vacate. *See Barbour*, 471 F.3d at 1225-26.

Cranford also argues that he suffered an actual injury in connection with the deficiency notices he received in September and December 2009, because he lacked access to the rule cited in these notices—Nev.R.App.P. 3(a)(2). This argument, however, lacks merit for several reasons. Because these deficiency notices provided the exact citation to the relevant rule, Cranford's exhibits demonstrated that he could have requested the full text of this rule through the FDC's interlibrary loan system, pursuant to the procedures set forth in administrative rule 33-501.301(6)(C). Admin. Code Ann. r. 33-501.301(6)(c). Significantly, Cranford's exhibit E showed that, when he requested a copy of Nev.R.App.P. 3(a)(2), the FDC library official did not deny the request outright, but merely instructed Cranford to follow the procedures set forth in Rule 33-501.301(6)(c). Moreover, the deficiency notices made clear to Cranford that, despite a deficiency, his appeal "has been sent to the [Nevada] Supreme Court,"

23

and would be docketed in the Nevada Supreme Court. Cranford did not explain why he suffered prejudice despite the fact that his appeals had been forwarded to, and would be docketed in, the Nevada Supreme Court. As a result, Cranford's assertions regarding the deficiency notices did not adequately allege an actual injury sufficient to support an access-to-the-courts claim. *See Barbour*, 471 F.3d at 1225-26.

Because Cranford failed to sufficiently allege that he suffered an actual injury as a result of the FDC's allegedly unconstitutional interlibrary loan system, the court did not err in dismissing Cranford's complaint under § 1915(e)(2)(B)(ii), and we affirm as to this issue.

## III.

As noted above, we do not consider arguments raised for the first time on appeal. *Miller*, 449 F.3d at 1150 n.1. Even under a liberal construction of Cranford's objections to the magistrate's report and recommendation, he failed to argue that the report and recommendation violated the principle of judicial neutrality, or that the dismissal of his complaint under § 1915(e)(2)(B) would violate his constitutional right to equal protection. Accordingly, we do not consider these arguments. *See Miller*, 449 F.3d at 1150 n.1.

**AFFIRMED.**

24